[No. 9229.  Department Two.  October 13, 1911.]

The State of Washington, *Respondent*, v. H. M. Boone,
*Appellant.*[1]

EMBEZZLEMENT—INFORMATION — CONTINUOUS OFFENSE — CRIMINAL
LAW—BILL OF PARTICULARS—EFFECT.  An information charging em-
bezzlement of $22,000 on divers dates and days continuously from
June 20th, 1908 to February 1st, 1909, charges but one offense, al-
though by a bill of particulars furnished on demand three acts of
"embezzlement" are specified as occurring on September 25, Jan-
uary 5, and January 8; since the bill of particulars is no part of the
information.

EMBEZZLEMENT — CONTINUOUS OFFENSES — TRIAL — ELECTION BE-
TWEEN OFFENSES.  Upon such a charge, it is not error to refuse to
require the state to elect between the acts specified in the bill of
particulars, where it appears that many closely related but separate
transactions were involved, all culminating in the final condition
of the bank whereby it held worthless securities ·as an asset of
$22,000, all as a' result of defendant's continuous acts with reference
to his fraudulent stock subscription and its payment.

CRIMINAL LAW — TRIAL — MISCONDUCT OF ATTORNEY — APPEAL —
HARMLESS ERROR.  The statement of the prosecuting attorney in his
opening to the jury, on a trial for embezzlement of $22,000, that he
expected to prove the embezzlement of $153.33 and other similar em-
bezzlements not covered by the indictment, and the refusal of the
court to sustain exception thereto or withdraw the same, is not
prejudicial error requiring a new trial, where no evidence thereof
was offered at the trial.

Appeal from a judgment of the superior court for Whit-
man county, Canfield, J., entered July 2, 1910, upon a trial
and conviction of the crime of larceny by embezzlement.  Af-
firmed.

*John Pattison* and *Graves, Kizer & Graves*, for appellant.
*U. L. Ettinger* and *Hanna & Hanna*, for respondent.

Crow, J.—The prosecuting attorney of Whitman county,
by information, charged the defendant, H. M. Boone, with

[1]Reported in 118 Pac. 46.

the crime of larceny by embezzlement. On trial the jury found him guilty, and he has appealed from the final judgment and sentence. The information in part charges:

"That the said H. M. Boone, on the 20th day of June, 1908, in the county of Whitman, and in the state of Washington, and on divers dates and days from thence continuously to the 1st day of February, 1909, while then and there acting as the president of and an agent of the Palouse State Bank, a banking corporation organized and existing and doing business as such in the city of Palouse, Whitman county, state of Washington, during the period herein mentioned, did then and there unlawfully, fraudulently, wrongfully and feloniously convert to his own use certain moneys and funds of said banking corporation then and there intrusted to him by the said Palouse State Bank, and has failed to account to said Palouse State Bank for such moneys or funds so intrusted to him, the amount so wrongfully, unlawfully, fraudulently and feloniously converted to his own use by the said H. M. Boone, amounting in the aggregate to the sum of twenty-two thousand dollars, being of the value of twenty-two thousand dollars, . . ."

Upon appellant's motion the trial court required the state to furnish a bill of particulars showing the different dates the appellant is alleged to have embezzled money and funds as charged in the information and the amount embezzled at each date. In response to this order, the state furnished the following bill of particulars:

"That the defendant, on or about the 25th day of September, 1908, embezzled, as charged in the information in said action, of the funds and property of the Palouse State Bank, the sum of $10,200, and the further sum of $59. That the defendant, on or about the 5th day of January, 1909, embezzled, as charged in the information in said action, of the funds and property of the Palouse State Bank the sum of $10,126.66. That the defendant on or about the 8th day of January, 1909, embezzled, as charged in the information in said action, of the funds and property of the Palouse State Bank the sum of $500."

Thereupon appellant moved the court for an order requir-

ing the respondent to elect upon which of the several and distinct offenses charged in the information, as set forth and disclosed by the bill of particulars, it would go to trial. This motion was repeatedly renewed on the opening statement of counsel for the state, and during the introduction of evidence, but was at all times denied. Appellant's only assignments are, (1) that the trial court erred in not requiring respondent to elect upon which separate offense disclosed by the bill of particulars, the opening statement of counsel, and the evidence it would ask a conviction; and (2) that the special prosecutor committed error by his conduct in the opening statement, perpetuated and intensified by the trial judge in his refusal to withdraw the same, or to reprimand the prosecutor.

Appellant proposed and caused to be certified a bill of exceptions, which discloses the proceedings affecting his assignments of error. Appellant appeared as a witness in his own behalf, and respondent, by way of amendment, caused his evidence to be incorporated. The entire opening statement of the special prosecutor is incorporated in the bill of exceptions, and shows the following facts as claimed by the state: The Palouse State Bank, of the city of Palouse, was originally incorporated with a capital stock of $25,000, divided into 250 shares of the par value of $100 each. For some time prior to June 1, 1908, and at all times thereafter and herein mentioned, appellant was president of the bank. On or about November 4, 1905, the capital stock, by proper procedure, was raised to $50,000. Of this increased stock $5,000 was then subscribed and paid. About June, 1908, the state bank examiner ordered the bank to have the remaining $20,000 issued and fully paid. The directors thereupon permitted appellant to subscribe for the remaining $20,000 of stock. He at the time had no available funds with which to pay his subscription, but procured one Hill and one Oderlin, responsible parties, to execute and deliver to him their four accommodation notes for $5,000 each, placing his stock with

them as collateral. He then negotiated a loan of $20,000 from the Exchange National Bank of Spokane, giving his two notes for $10,000 each, one due about September 25, 1908, and one due about January 8, 1909, which he secured by depositing the Hill and Oderlin notes as collateral. The $20,000 thus raised was paid to the Palouse State Bank in full settlement of his stock subscription. The Exchange National Bank was the Spokane correspondent of the Palouse State Bank.

On or about September 28, 1908, when appellant's first $10,000 note matured, he directed the Exchange National Bank to pay it from funds the Palouse State Bank then had on deposit with it in Spokane. This was done, appellant's note was returned to him, and the Exchange National Bank charged the account of the Palouse State Bank with $10,000 principal and $200 accumulated interest. To meet this disbursement from the funds of the Palouse State Bank, appellant proceeded as follows: He procured one Woodward to execute and deliver to the Palouse State Bank his note for $10,000, which the state contended was worthless, and which appellant delivered to the Palouse State Bank and caused to be entered in its account of bills receivable. In exchange for this note, appellant gave Woodward his personal note for $10,000, telling Woodward he had a deal which he could not consummate in his own name, and that he would protect Woodward from payment of his note to the bank. Woodward's note thus entered apparently satisfied the $10,000 withdrawn to pay the principal of appellant's note. To meet the $200 withdrawn for interest, the following procedure was adopted: The Palouse State Bank then held the note of one Herlihy for $259. Herlihy sent it a renewal note for $259, which appellant entered as bills receivable on the bank books, without withdrawing the original note or paying any additional consideration to Herlihy for the renewal note. This exceeded the $200 interest disbursement.

Thereupon appellant wrote a check to himself for $59 and took the money.

Without going into details, it may be stated that the prosecutor's opening statement further disclosed the claim of the state to be that, when appellant's second note for $10,000 to the Exchange National Bank matured, he met it by similar proceedings, in that he caused it to be paid from deposits of the Palouse State Bank, met the deficiency with accommodation notes obtained from various parties to whom he gave his notes in exchange, telling them he had a transaction which he could not conduct in his own name, and that he would protect them. During these various transactions, appellant obtained and used in the bank an accommodation note for $5,500 from one Calif, to whom he gave his note in exchange. Calif had another note for $5,000 in the Palouse State Bank, on which he had actually obtained a loan. Early in the year 1909, appellant returned this $5,000 note to Calif and demanded the return of his own note which Calif then held. Thereupon Calif stated that his note was for $5,500. Appellant told him the bank had given him credit for $500. Calif, being satisfied, thereupon returned appellant's note for $5,500, and when the bank failed, Calif's $5,500 accommodation note still remained upon its books as bills receivable.

Without going into minute details, the opening statement of the special prosecutor disclosed that appellant, by various changes, transfers, negotiations, and book entries, finally withdrew from the bank all of the accommodation notes he had thus procured and delivered to it as bills receivable, except the Calif accommodation note for $5,500 and the renewal note of Herlihy for $259; that he borrowed some 44,000 shares of mining stock of a value not exceeding five cents per share, for which loan he paid the lender $2,000 from the bank funds; that at or shortly after January 8, 1909, he placed this stock in the bank and entered the same upon its books as an asset at a valuation of $22,000; that about January 27, 1909, appellant made a sham contract with Woodward,

whereby Woodward agreed to take the mining stock at a fictitious valuation; that he then told Woodward he would never enforce the contract, and that he wanted it so he could carry the mining stock as an asset of the bank. When the bank failed, this mining stock, and possibly Woodward's agreement to purchase it at a fictitious valuation, were the only assets in the bank or shown upon its books, offsetting what would otherwise have been a shortage of $22,000 growing out of the original payment of appellant's two notes for $10,000 each, and the various transactions above stated. We do not assert this resume of counsel's opening statement is complete in detail, but it is sufficiently accurate in every material respect for the purpose of considering appellant's assignments of error.

Appellant's first contention is that the bill of particulars and the opening statement disclosed separate, distinct and complete acts of embezzlement, any one of which, if proven, would have been sufficient to sustain a conviction under the information; that the respondent should have been compelled to elect the particular embezzlement upon which it relied for conviction; and that the trial judge erred in not requiring such an election. Respondent insists one continuing offense only has been disclosed by the opening statement, which culminated in a final embezzlement of $22,000 as charged in the information. One offense only was charged, and the bill of particulars was no part of the information. *State v. Dix*, 33 Wash. 405, 74 Pac. 570.

There can be no question as to the elementary principle for which appellant contends, that when the evidence under an information charging a single offense is sufficient to show several distinct and complete commissions of the crime charged, the state may, and should, be required to elect the particular offense upon which it will rely for conviction. This rule was recognized by this court in *State v. Osborne*, 39 Wash. 548, 81 Pac. 1096, cited by appellant, in which the defendant was charged with the crime of rape. But in that case each act

of illicit intercourse constituted a distinct, separate, and complete crime in itself. The charge made by the information in this cause is a continuing offense, which the opening statement shows involved many separate transactions, all culminating in the final condition of the bank shown at the date of its failure, about February 1, 1909, whereby it held worthless, or practically worthless, mining stock at a valuation of $22,000, as a portion of its assets, and whereby the total sum of $22,000 was shown to have been embezzled by appellant. Had the trial court required an election, it is manifest the state might have been unjustly thwarted in obtaining a conviction, even though the appellant was in fact guilty of the entire offense charged.

In *Young v. State*, 26 Ohio Cir. Ct. 747, on a trial for embezzlement, it was contended that the state should have been required to elect the particular act of embezzlement on which it relied for conviction. The court said:

"Amos Young had been secretary of the building association for several years prior to his indictment. The state, to prove the charge in the indictment that he embezzled some $6,000 on September 4, 1902, offered evidence of many alleged defalcations, on separate days, aggregating that amount. . . . After the evidence as to these several irregularities, alleged to have been committed on different days, and from time to time, was all in, defendant moved that the state be compelled to elect upon which one of the alleged separate offenses it would depend for conviction of the defendant. This motion was overruled, and, we think, properly. The nature of the crime of embezzlement is such that although money may be received by an agent or servant from time to time, as it comes into his hands lawfully, there may be no completed crime of embezzlement until, having thus received several sums at different times, he finally refuses or is unable to account for the aggregate amount. This view of the case, taken by the trial judge as shown by his charge and ruling on the motion to elect, is supported not only by reason, but by authority. *Brown v. State*, 18 Ohio St. 496; *Gravatt v. State*, 25 Ohio St. 162; *State v. Mook*, 40 Ohio St. 588; *State v. Bailey*, 50 Ohio St. 636, 36 N. E. Rep. 233."

This case was later affirmed by the supreme court without an opinion. *State v. Young*, 73 Ohio St. 372, 78 N. E. 1138. Appellant calls attention to the fact that the bill of particulars mentions separate acts and dates, using the words "embezzled as charged," and contends that the word "embezzled" has a distinct meaning; that it must have been used in its technical and legal sense by the prosecuting attorney, who prepared and verified the bill of particulars. The use of the word "embezzled" was, perhaps, inapt and unfortunate, but the bill of particulars was no part of the information, to which we must look for the crime charged, and which charges one continuous offense only. The true purpose of the bill of particulars was to compel the state to observe certain limitations in offering its proof, and to advise the appellant of the particular transactions out of which it claimed the continuing embezzlement finally resulted. The state should not have been compelled to select one only of these closely related transactions and, for conviction, rely upon it to the exclusion of all others, as a completed crime of larceny by embezzlement. The facts disclosed by counsel's opening statement were more closely allied as parts of one continuing offense than were those shown by the evidence in *State v. Ray*, 62 Wash. 582, 114 Pac. 439, where this court sustained the denial of a motion for an election. In *Ker v. People*, 110 Ill. 627, 645, 51 Am. Rep. 706, the court said:

"It is insisted the evidence shows a cumulation of offenses, and for that reason it was error in the court to deny defendant's motion to compel the prosecution to elect upon what alleged act of larceny or embezzlement a conviction would be asked. The court, by its ruling, submitted all the evidence touching the embezzlement of funds and securities by defendant, to the jury, and it is not perceived how it could properly have done otherwise. Embezzlement is a crime defined by statute, and it was entirely competent for the legislature to declare what acts would constitute the crime, and fix the measure of punishment. One element that enters into the statutory definition of embezzlement, is the fiduciary

or confidential relation. Such relations afford the amplest opportunity to misappropriate money, funds and securities, and often present great difficulty in proving exactly when and how it was done. This is especially true with regard to clerks and confidential agents in banks, or other corporations or firms doing a large business and who are entrusted, in whole or in part, with the care or custody of funds, securities and property belonging to banks or other corporations, or to a co-partnership. It is difficult, in such cases, if at all possible, to prove with certainty when or how the embezzlement was effected. It is, of course, done with a view to avoid detection, and the confidential relations existing ward off suspicion. Embezzlement may, and most often does, consist of many acts done in a series of years and the fact at last disclosed that the employer's money and funds are embezzled is the crime against which the statute is leveled. In such cases, should the prosecution be compelled to elect, it would claim a conviction for only one of the many acts of the series that constitute the *corpus delicti*, it would be doubtful if a conviction could be had under sections 75 and 76 of the criminal code, against a clerk in a bank or other corporation, or a co-partnership, although the accused might be conceded to be guilty of embezzling large sums of money in the aggregate. . . . . The body of the crime consists of many acts done by virtue of the confidential relations existing between the employer and the employe, with funds, moneys or securities over which the servant is given care or custody, in whole or in part, by virtue of his employment. The separate acts may not be susceptible of direct proof, but the aggregate result is, and that is embezzlement."

See, also, *Willis v. State*, 134 Ala. 429, 33 South. 226; *Starling v. State*, 90 Miss. 255, 43 South. 952; *People v. McKinney*, 10 Mich. 53, 94; *People v. Glazier*, 159 Mich. 528, 124 N. W. 582; *State v. Morris* (Ore.), 114 Pac. 476.

The bill of exceptions recites that "the state introduced evidence tending to show that, on or about September 25, 1908, the defendant embezzled of the funds and property of the Palouse State Bank the sum of $10,259." Later statements, relative to other dates and amounts, are made to the same effect. The bill of exceptions was not certified by the

trial judge, but by his successor in office. Its statement is that the evidence introduced *tended* to show the defendant had embezzled certain funds on the dates mentioned. It does not state the evidence was sufficient to show a completed separate act of larceny by embezzlement.

Our conclusion is, that the information charged but one continuing offense; that the bill of particulars in no way became a part of the information; that the entire opening statement of counsel, when considered in the light of the information and the bill of particulars, developed but one continuing offense; that the cause is not one in which an election should have been required; and that the trial court did not err in refusing an election. This conclusion is supported by the testimony of the appellant himself, as developed on cross-examination by counsel for the state. It appears from his statements that, in the latter portion of his various deals growing out of the payment of his original $20,000 notes from funds of the Palouse State Bank, he finally borrowed the mining stock; that he paid $2,000 from bank funds for the loan; that the stock was carried on the bank books as an asset at a valuation of $22,000; that he made no definite statement or estimate as to its actual value; and that whatever its value may have been, it in any event did not belong to the bank, although carried on its books as one of its assets, a fact known to appellant as the bank president. Without regard, however, to the appellant's evidence, we think it apparent from the remainder of the record that the crime charged by the information and disclosed by the opening statement was one continuing offense; that its character as such was not changed or modified by the bill of particulars; and that, in the absence of the evidence, we would not be justified in holding the trial judge erred in denying appellant's motion for an election.

Appellant's remaining contention is that the special prosecutor injected error in the case by misconduct in his opening statement, and that the trial judge perpetuated and intensi-

fied the same by refusing to withdraw it from the jury or to reprimand him. Repeatedly, during the opening statement, appellant's counsel objected to the remarks made as argumentative, and in many instances the trial court cautioned the special prosecutor to avoid argument and to confine himself to a statement of the case and the evidence upon which he would ask a conviction. In all such instances counsel immediately expressed a desire to refrain from argument, and we think he did so. A portion of appellant's objections were made in urging his contention that the special prosecutor was stating the commission of several separate, distinct, and complete acts of embezzlement. From our own statement, it is apparent that the special prosecutor, of necessity, was required to enter with much detail upon the history of the various transactions involved, so that the jury might understand the nature of the charge, and the evidence upon which the state would rely. We have examined the statement and conclude it was impartially made; that it was devoid of exaggeration or unfair assertion, and that the prosecutor endeavored to be reasonable and fair. At its close, the record shows the following occurrences:

"Judge Hanna (counsel for the state): Now, gentlemen, we expect the evidence in this case to prove to you as a fact that Mr. Boone put in $20,000 in payment of this capital stock, as I have told you. We expect the evidence to prove to you that he took the money out again to pay for the money that he put in, and that along with it he took interest amounts on these various notes. He took $200, and took $59, and took $126.66. We expect the proof along that line to prove similar offenses not covered by this indictment. That on August 16, 1908, that Mr. Boone took out of the funds, he being president, the funds of the Palouse State Bank, $153.33. Mr. Pattison (counsel for appellant): We object. He says it is not covered by the indictment and is not in the case. By the Court: In this matter I will permit Judge Hanna to make his opening statement. You may take any exceptions you desire. He understands the rule of practice, and if you have error in it it is his outlook; he is representing the state.

Mr. Pattison: The defendant now excepts to the statement just made by the prosecuting attorney to the jury in relation to the $153 item, and asks a ruling of the court that it be stricken from the consideration of the jury. By the Court: Proceed with your statement, judge. I shall permit Judge Hanna to make his opening statement. I will strike nothing from it. I will give you at any time until the motion for a new trial is filed to file exceptions to his opening statement— formal exceptions. Mr. Moore (of counsel for appellant): Then the defendant excepts; without a motion to strike out, the defendant excepts to the statement of the prosecuting attorney just made with reference to the $153 mentioned not in the information. The Court: Proceed, Judge Hanna. By Judge Hanna: That on that day, as president, he took from the funds of the bank and appropriated to his own use, $153.33, and appropriated it to his own use by paying interest on one of these $10,000 notes to the Exchange National Bank, his own note. We expect to show you further embezzlements of a similar nature not covered by this indictment, made by Mr. Boone as president, from the funds of the bank. Thanking you, I close."

It is upon this last statement, relative to the $153.33, appellant bases his principal contention that the prosecutor was guilty of prejudicial and erroneous misconduct. Appellant now insists the statement thus going before the jury, with the apparent approval of the court, must have been prejudicial. Counsel, at the time of making his statement, doubtless intended to introduce evidence of the withdrawal of $153.33 as bearing upon appellant's general intentions. Counsel told the jury this item was not included in the information. The trial continued for a period of ten days, during which numerous witnesses testified, and a multitude of exhibits were admitted. The bill of exceptions discloses the fact that no evidence relative to the $153.33 was introduced. It may have been overlooked, or for some unexpected reason counsel may have been unable to produce it. But be that as it may, an appellate court, in the absence of some affirmative showing that counsel's opening statement was

prejudicial, will not hold it ground for reversal. In *People v. Gleason*, 127 Cal. 323, 59 Pac. 592, the court said:

"The prosecuting attorney in his opening statement to the jury mentioned one or two facts which he said he expected to prove, but which he did not prove; and appellant contends that this was such misconduct as calls for a reversal. No objection was made to this during the trial; but, waiving the question whether the point is properly presented here, the contention cannot be maintained. It would be going a great distance to hold that every time a district attorney happens to state in his opening more than he is able to prove, the judgment should be reversed for misconduct; and there is nothing in the present case to show such an extreme disregard for the truth and such a clear intent to influence the jury by false statements as would warrant a reversal of the case upon that ground. Usually, such an overstatement is prejudicial to the party making it."

See, also, *State v. Pepoon*, 62 Wash. 635, 114 Pac. 449; *People v. Searcey*, 121 Cal. 1, 53 Pac. 359, 41 L. R. A. 157; *Reynolds v. State*, 147 Ind. 3, 46 N. E. 31; *State v. Allen*, 100 Iowa 7, 69 N. W. 274; *State v. Trusty*, 122 Iowa 82, 97 N. W. 989; *People v. Ruef* (Cal.), 114 Pac. 54; *Commonwealth v. Mudgett*, 4 Pa. Dist. Ct. 739. Taking the entire statement into consideration, we are unable to find misconduct on the part of the special prosecutor sufficient to constitute reversible error.

The judgment is affirmed.

Dunbar, C. J., Ellis, and Morris, JJ., concur.