FRANK MAYFIELD *et al.* v. STATE.

No. A-3379. Opinion Filed June 7, 1920.

(190 Pac. 276.)

(Syllabus.)

1. **APPEAL AND ERROR—Harmless Error—Opening Statements.** It is not the rule in this state that error presumes injury, and a judgment of conviction will not be reversed because in the opening statement of the case to the jury the county attorney was permitted to state, over the objection of defendants' counsel, that he expected to prove certain statements of a codefendant, not upon trial, made at the time of the arrest of such codefendant and not in the presence of the defendants on trial, unless after an examination of the entire record it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.

2. **SAME.** Where the trial court at the trial afterwards sustained an objection to the offer of the county attorney to prove such statements, and held the evidence inadmissible, and it is clear from the record that the statement of what the county attorney expected to prove was not maliciously made, but resulted from a misconception of the law as to the admissibility of such evidence, and the competent evidence adduced against the defendants reasonably supports the verdict, no apparent injury has resulted.

3. **TRIAL—Instructions—Defining "Reasonable Doubt."** The practice of trial courts in attempting to define the term "reasonable doubt" is not approved. For an instruction defining "reasonable doubt" and held not to be erroneous, see body of opinion.

4.     **LARCENY—Grand Larceny—Sufficiency of Evidence.** Evidence examined, and held sufficient to support the conviction.

*Appeal from District Court, Rogers County;*
*W. J. Campbell, Judge.*

Frank Mayfield and Leonard Mayfield were convicted of the crime of grand larceny, and they appeal. Judgment as to each affirmed.

Frank Mayfield and Leonard Mayfield were convicted in the district court of Rogers county, at the December 1917, term of that court, of the crime of grand larceny, for stealing 16½ bushels of wheat from the granary of one B. S. Clifton, a farmer living in the northwest part of said county. These defendants were jointly informed against with one Jess Kirk and one Ed Polson, and were granted at their request a separate trial, and upon a verdict of guilty the court sentenced each of these defendants to serve a term of one year and three months' imprisonment in the state penitentiary.

The evidence is substantially as follows:

On the morning of the 3d day of August, 1917, between the hours of 2 and 3 o'clock, W. R. Mosby, a constable, and W. E. Heinzelman, a deputy sheriff, were patroling the public highways in the northwest part of Rogers county for the purpose of discovering persons hauling intoxicating liquors in automobiles; it was a moonlight night, and the said officers apprehended one Jess Kirk with an automobile loaded with wheat. Three other men were in the car with Kirk, but jumped out when these officers in a second car were about to overtake them. One of the officers testified that in his best judgment two of the men that jumped out of the car in which Kirk was riding were these defendants, the Mayfield boys, and that the third person was

Ed Polson. Kirk was overtaken and arrested, and the finding of the wheat in Kirk's car was reported to the prosecuting witness, B. S. Clifton, who up to that time did not know that any of his wheat had been stolen. After the report of the finding of the wheat and the arrest of Kirk, the officers, Mosby and Heinzelman, together with Mr. Clifton, went to the latter's granary and discovered where some wheat had evidently been taken therefrom, and tracks of an automobile were also found in a public highway near the granary, and evidence of footprints back and forth from the granary to the place where the automobile had been standing, and also evidence of wheat scattered along from the granary to the place where the automobile had been standing.

After the arrest of Kirk, and on the day following, other officers went to the home of the Mayfields and arrested them on this charge, and the testimony is by such officers that the Mayfields asked if Kirk had turned them in, and these officers also swore that the Mayfields stated at the time of their arrest that they "jumped out of the car and liked to have got run over." The defense interposed was an alibi; one of the defendants testifying that they stayed at home from 8 o'clock in the evening of August 2, 1917, until the next morning, and slept on a porch at their home all that night, and had nothing to do with stealing the wheat. However, the defendants admitted that they were in the city of Collinsville on the afternoon of August 2, 1917, and were in company with Jess Kirk in an automobile, and stopped at the residence of a witness by the name of Hagerty, who lived between Collinsville and the home of the Mayfields, north of that city, and the evidence is that one of the Mayfield boys tried to borrow some money from Hagerty on that occasion.

Fred Ellis, a brother-in-law of these defendants, testified that he was living at the Mayfield home at that time and that these defendants, together with Jess Kirk, came to that place about 7 or 8 o'clock in the evening of August 2, 1917, in an automobile, and that Jess Kirk was driving the car; that Jess Kirk stayed there about 30 minutes and then left, and that the defendants were at the Mayfield home when the witness Ellis went to bed on the porch and were there sleeping on the porch when the witness got up about 9 o'clock the next day.

F. M. Mayfield, the father of these defendants, was introduced as a witness in their behalf, and testified that he was at home on the night of the 2d of August, 1917, and heard them come home some time in the fore part of the night, and also knew that they were there the next morning, but that he slept in a different room and did not pay any particular attention to the boys that night. The witness Frank Mayfield also denied making the statement to the arresting officers about asking if Jess Kirk had told on them, or about jumping from the car. The defendant Leonard Mayfield did not take the witness stand.

*Goldesberry & Boone,* for plaintiffs in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

MATSON, J. (after stating the facts as above). The first assignment of error relates to the action of the trial court in permitting the county attorney, in his opening statement of the case to the jury, to state that the evidence would show that one Jess Kirk told the officers, at the time he (Kirk) was arrested, that the wheat in the automobile belonged to Mr. Clifton, and that the parties who jumped

from the car were Frank Mayfield and Leonard Mayfield. The record relative to this assignment is as follows:

"That they arrested Mr. Kirk, who, I believe the evidence will develop, was the driver of the car, and they found this car contained about 16½ bushels of wheat; that Mr. Kirk told the officers who made the arrest that the wheat belonged to Mr. Clifton and that it was taken that night, and as a part of the statement he voluntarily made the statement that the parties who left the car was Frank Mayfield, Leonard Mayfield— (interrupted by counsel for the defendants).

"By Counsel for Defendants: Wait a minute—we object to that statement because if the evidence is offered it will be incompetent, irrelevant, and immaterial and cannot be used against these defendants.

"By the Court: Overruled.

"By Counsel for Defendants: Exception.

"By Counsel for the State (continuing) : That they took this party in charge and I think the evidence will show that they took the wheat to Vera and unloaded it, and immediately went to Mr. Clifton's residence and thereupon told him of the incident and he went down, and discovered that the wheat was missing."

It will be noted that, while objection was made to the statement of the county attorney relative to what Kirk had said to the arresting officers concerning the Mayfield boys having jumped from the automobile, there was no request made to the trial judge to withdraw said remarks from the consideration of the jury. While it is apparent that the court erred in not sustaining the objection of defendants' counsel to this statement of the county attorney, in view of the fact that it was not made to appear that either of the Mayfield boys was within hearing distance at the time

Kirk is alleged to have made this remark, it is also clear from the entire record in this case that the statement was not made by the county attorney maliciously and purposely with the intent to prejudice these defendants, but was made by him under a misconception of the admissibility of this evidence. Later, in the progress of the trial, the county attorney offered to prove by these officers that Kirk had made the statements attributed to him in the opening statement, and the trial court at that time very promptly and correctly sustained the objection of defendants' counsel to the admission of this evidence, because the testimony of the officers then developed that the defendants Mayfield were not within the hearing of Kirk at the time the remark was made. After the trial court had ruled upon the admissibility of this evidence, no further attempt was made by the county attorney to draw from any witness any statement of Kirk's relative to the Mayfield boys.

While this court is of the opinion that the trial court erred in not sustaining the objection of defendants' counsel to the statement of the county attorney, we do not think the error complained of sufficiently prejudicial to authorize a reversal of this judgment under the circumstances of this case. It is not the rule that error presumes injury, and the foregoing assignment of error rests upon the same basis as would the improper admission of evidence. An application must be made in this instance of the provisions of section 6005, Revised Laws 1910, which prohibits this court from reversing any judgment of conviction in such an instance, "unless * * * after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

The trial court also, over objection and exception by defendants' counsel, gave an instruction defining the term "reasonable doubt." This court has repeatedly urged trial courts not to attempt to define the term "reasonable doubt," as an instruction that it is incumbent upon the prosecution to prove the guilt of the defendant beyond a reasonable doubt is held to be sufficient without further explanation. Ofttimes an attempt to define such term results in confusion which tends to create doubts instead of removing them. Hence the admonition against giving such instruction. *Gransden v. State,* 12 Okla. Cr. 417, 158 Pac. 157; *Nelson v. State,* 5 Okla. Cr. 369, 114 Pac. 1124.

The instruction given in this case was as follows:

"You are instructed that, by the term 'reasonable doubt' is meant a real, substantial doubt of the guilt of the defendant, existing or arising in your minds after a fair consideration of all the evidence in the case. It is more than a mere surmise, conjecture, or fanciful doubt. It is such a doubt as would cause a reasonably prudent man to pause or hestitate before acting on matters of grave importance to himself. If, after considering all the evidence in the case, your judgment and understanding are convinced and satisfied of the guilt of the defendants, or either of them, and you have a fixed abiding conviction, amounting to a moral certainty, that the defendants, or either of them, are guilty, then you have no reasonable doubt, and must convict such defendant; otherwise, if your minds and understandings are not so convinced and satisfied, then it will be your duty to acquit the defendants."

It is to be noted that the trial court, in the foregoing instruction, told the members of the jury that their judgment and understanding must be convinced and satisfied from a consideration of all the evidence of the guilt of the defendants, or either of them, to the extent that they have

a fixed abiding conviction, amounting to a moral certainty, before they would be justified in convicting either of the defendants.

In the case of *Hopt v. Utah*, 120 U. S. 430, 7 Sup. Ct. 614, 30 L. Ed. 708, the Supreme Court of the United States approved an instruction defining reasonable doubt somewhat similar to the one given in this case. In the *Hopt* Case, Mr. Justice Field, speaking for the court, said:

"The word 'abiding' here has the signification of settled and fixed, a conviction which may follow a careful examination and comparison of the whole evidence. It is difficult to conceive what amount of conviction would leave the mind of a juror free from a reasonable doubt, if it be not one which is so settled and fixed as to control his action in the more weighty and important matters relating to his own affairs. Out of the domain of the exact sciences and actual observation there is no absolute certainty. The guilt of the accused, in the majority of criminal cases, must necessarily be deduced from a variety of circumstances leading to proof of the fact."

In the case of *Thompson v. State*, 16 Okla. Cr. 716, 184 Pac. 467, this court held an instruction defining "reasonable doubt" in terms almost identical with that given in this case not to be reversible error.

The practice of trial courts in attempting to define "reasonable doubt" is not approved, and the foregoing instruction is not incorporated in this opinion for the purpose of giving the same the unqualified approval of this court. On the other hand, the court is satisfied from an examination of the record that this alleged error did not affect the substantial rights of the defendants in this case, and is not such as should result in a reversal of this judgment.

It is also contended that the evidence in the case is not sufficient to support the conviction. The court is not impressed with the cogency of the argument advanced in support of this assignment. It is sufficient to say that there is ample competent evidence in the record which would authorize the jury to conclude that the crime was committed as charged in the information, and that the defendants were participants therein.

For the reasons stated, the judgment of conviction as to each defendant is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.