STATE, Respondent, v. ALFRED E. CAVINESS, Appellant.

[235 Pac. 890.]

HOMICIDE — MOTION IN ARREST OF JUDGMENT — INFORMATION—SUFFICIENCY OF—MOTION FOR NEW TRIAL—INSTRUCTIONS—ASSIGNMENTS OF ERROR—MISCONDUCT OF COUNSEL—EVIDENCE—OFFER OF PROOF —ADMISSIBILITY.

1. Where an information charges murder in the first degree substantially in the language of the statute, it is not necessary to allege that the deceased died within a year and a day of the time of the infliction of the fatal blow where the information alleges that she died prior to the filing thereof and the same was filed prior to the expiration of such period.

2. A requested instruction requiring the court to single out any particular fact in evidence and suggest to the jury the effect which may be given it, thereby emphasizing particular facts favor-.

---

Publisher's Note.

1. Form and sufficiency of indictment, see notes in 94 Am. Dec. 253; 3 Am. St. 279.

able to the defendant and ignoring other evidence having a contrary tendency, is properly refused.

3. Certain instructions given by the court on its own motion examined and *held* not prejudicial.

4. Where errors are assigned but are not discussed either in the brief or upon oral argument and no authorities are cited in support of such assignments, they will neither be reviewed, considered nor discussed by this court.

5. If the purity of the verdict might have been affected by misconduct of the prosecuting attorney it must be set aside, but if it could not have been affected thereby it will be sustained. Alleged misconduct of prosecuting attorney considered and *held* not to affect the purity of the verdict, especially in view of the court's repeated admonitions to the jury.

6. A defendant in a criminal prosecution is not permitted by way of defense to show by conjectural inferences that some other person might have committed the crime for which he is on trial, or that some person other than himself is more probably guilty. *Held*, that an offer of proof that unidentified burglars had been operating in the neighborhood and may have committed the crime, together with other acts remote and disconnected with the crime, was properly refused.

7. Evidence examined and *held* sufficient to support verdict.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Raymond L. Givens, Judge.

Defendant was convicted of murder in the first degree and from judgment of conviction and order overruling motion for new trial appeals. *Affirmed.*

J. T. Cook and Harry Keyser, for Appellant.

The information must allege the date of the death of the deceased, in order to charge the crime of either murder or manslaughter, or it must appear that deceased died within a year and a day, in order to constitute either crime. (C. S., sec. 8216; see cases collected in note to *Commonwealth v. Snell,* 189 Mass. 12, 75 N. E. 75, 3 L. R. A., N. S., 1019, at 1022, to 1025, inclusive, and note to *State v. Dailey,* (Ind.), 20 A. L. R. 1004, 134 N. E. 481; 13 R. C. L., sec. 208, pp. 902, 903.)

Where the evidence relied upon for conviction by the state is of such character that the purity of the verdict might have been affected by the alleged misconduct of the prosecuting attorney, such verdict will be set aside. (*State v. Douglass,* 35 Ida. 140, 208 Pac. 236; *People v. Manganaro,* 218 N. Y. 9, 112 N. E. 436; *State v. Evans,* 267 Mo. 163, 183 S. W. 1059; *Kelly v. State,* 79 Tex. Cr. 362, 185 S. W. 570.)

The rule that withdrawal of prejudicial matter or an instruction to the jury to disregard it cures any error does not apply where statements of counsel are calculated to irrevocably sway the minds of the jurors and instructions are not sufficiently specific. (*People v. Manganaro, supra.*)

Where error is shown it is presumed to have worked injury to the party against whom it was committed, unless it affirmatively appears from the record that no injury did or could result. (*Holt v. Spokane etc. Ry. Co.,* 3 Ida. 703, 35 Pac. 39.)

A. H. Conner, Attorney General, and James L. Boone, Assistant, for Respondent.

An information charging a crime in the language of the statute defining that crime is sufficient. (*State v. Lundhigh,* 30 Ida. 365, 164 Pac. 690.)

The sufficiency of an indictment is not to be tested by rules of common law, but by the requirements of the criminal practice act. The requirement of the statute that it must appear that the party died within a year and a day is a rule of evidence only. (*People v. Murphy,* 39 Cal. 52; *People v. Sanford,* 43 Cal. 291.)

It is not error to refuse an instruction which singles out any particular fact in evidence and suggests to the jury the effect which may be given to it. (*State v. Jones,* 28 Ida. 428, 154 Pac. 378; *State v. Pettit,* 33 Ida. 326, 193 Pac. 1015.)

A judgment will not be reversed where the impression received by the jury from the misconduct of the prosecuting attorney is not such that it may well be said that the misconduct rather than the evidence was the determining factor

in their decision.  (*State v. Douglass*, 35 Ida. 140, 208 Pac. 236.)

BUDGE, J.—Appellant was charged with and convicted of the crime of murder in the first degree and his punishment was fixed by the jury at life imprisonment.  A motion in arrest of judgment was made by appellant and overruled. Thereupon judgment was pronounced in accordance with the verdict.  A motion for new trial was later made and overruled.  This appeal is from the judgment and from the order overruling the motion for a new trial.  The victim of the murder was appellant's wife, Maude Ethel Caviness, who will be hereinafter referred to as the deceased.

Twenty-eight assignments of error are specified and relied upon for reversal.  It is asserted in the first assignment of error that the court erred in overruling appellant's motion in arrest of judgment.  This assignment attacks the sufficiency of the information upon the ground that it does not state a charge of murder or manslaughter and for that reason no valid judgment could be rendered upon the verdict of the jury.  It is insisted that the information is fatally defective in that it fails to allege that the deceased died within a year and a day after the alleged mortal wound was inflicted. The information charges the crime in the language of the statute and, under the authority of *State v. Lundhigh*, 30 Ida. 365, 164 Pac. 690, and *State v. Askew*, 32 Ida. 456, 184 Pac. 473, is sufficient.  (See, also, *State v. Sly*, 11 Ida. 110, 80 Pac. 1125, and *People v. Sanford*, 43 Cal. 29.)  It will also be observed that it is alleged in the information that deceased "died prior to the filing of this information." The crime is alleged to have been committed on September 1, 1922, and the information was filed on November 4, 1922, and it is therefore apparent that it is sufficiently alleged that the deceased died within a year and a day from the time she received the fatal blow.

The second assignment predicates error upon the court's refusal to give appellant's requested instruction No. 3, which is as follows:

"The jury are instructed that if there is any evidence before you which raises in your mind a reasonable doubt as to the presence of the defendant at the time and place where the crime is charged to have been committed, you must acquit the defendant. In this connection it is the contention of the defense that the defendant was sleeping with the little daughter Leona in the bed-room at the time when the deceased, Maude Ethel Caviness was struck by some person, unknown and unidentified, while she was occupying another bed or couch in an adjoining room, described in the testimony as the front or living-room. If you believe such to be the fact, or if the evidence *upon this phase of the case* raises in your mind any reasonable doubt as to such being the fact, then you must acquit the defendant."

This instruction falls within the rule announced in the case of *State v. Jones,* 28 Ida. 428, 154 Pac. 378, wherein it is held that it is error for the court in a criminal case to give an instruction which directs the attention of the jury specially to certain portions of the evidence and suggests to them certain inferences of facts to be drawn therefrom, thereby singling out for their consideration particular facts favorable to the defendant and ignoring other evidence having a contrary tendency. Also as was held in the case of *State v. Pettit,* 33 Ida. 326, 193 Pac. 1015:

"A requested instruction requiring the court to single out any particular fact in evidence and suggest to the jury the effect which may be given to it is properly refused."

To the same effect see *State v. Cosler,* 39 Ida. 519, 228 Pac. 277. The court properly refused to give appellant's requested instruction No. 3.

Assignments of error Nos. 3, 4, 5 and 6 relate to the giving of certain instructions by the court upon its own motion. A careful reading of the instructions complained of, considered in connection with the entire charge, convinces us that no prejudicial error was committed by the court in giving these instructions. Upon the whole they are fair and are not of such a character as would mislead the jury or result in an unjust verdict.

Assignment No. 8 is predicated upon the action of the court in sustaining the state's objection to a question put to the witness McBride, in which he was asked as to what appellant's daughter stated had happened on the night of the alleged crime. The statements sought to be elicited by the question were alleged to have been made in the presence of the witness shortly after the crime was committed. It is insisted by appellant that this statement was a part of the *res gestae* and was therefore admissible. Conceding that it was, without deciding the question, the daughter of appellant, who was but nine years old, was called as a witness on behalf of appellant and was fully examined and cross-examined touching all matters within her knowledge as to what occurred not only on the night in question but upon prior occasions, and due to her extreme youth great liberality was properly shown in an attempt to elicit all information touching the commission of the crime. In addition Dr. Mathers was permitted to testify as to what appellant's daughter said to him on the night of the crime. In view of this situation, if error was committed by the court in sustaining the objection to the question asked the witness Mc-Bride, it was harmless.

Assignments of error Nos. 9, 10, 11, 12, 13, 22 and 24 involve the action of the court in admitting and refusing to admit certain testimony. These assignments are not discussed in appellant's brief, nor were they discussed upon oral argument, if our recollection is correct, and no authorities are cited in support of these assignments. In the case of *State v. Lundhigh, supra,* this court said:

"It is further well settled that even where errors are assigned, if they are not discussed either in the brief or upon oral argument and no authorities are cited in support of the assignments, they will neither be reviewed, considered nor discussed by this court." (Citing many cases.)

See, also, to the same effect: *State v. Brockman,* 39 Ida. 468, 228 Pac. 250; *Hardy v. Butler,* 39 Ida. 99, 226 Pac. 669; *State v. Hoagland,* 39 Ida. 405, 228 Pac. 314. However, in view of the importance of this case, we have examined the

record in the light of these assignments and are convinced that no reversible error was committed by the court in these particulars.

Assignments of error Nos. 14, 15, 16, 17, 19, 20, 21, 23, 25, 26 and 27 are predicated upon the alleged misconduct of the prosecuting attorney and the failure of the court to admonish against such misconduct. While we do not hesitate to call attention to the fact that certain acts and conduct on the part of the prosecuting attorney are not to be commended, there were numerous incidents that arose during the trial in provocation of this conduct. Numerous objections and arguments at length were made touching matters that were not essential in the determination of the all-important question as to whether, at the time and in the manner as alleged in the information, appellant inflicted the wound upon the head of deceased which resulted in her death. The trial lasted for a considerable length of time and the testimony was all circumstantial. In view of this situation it is difficult to eliminate all irregularities in the conduct of counsel, and in this respect counsel for appellant are not entirely free from criticism. We do not mean to be understood as saying that this conduct on the part of counsel on either side was wilful and intentional, but perhaps the result of an excess of zeal. It is the sworn duty of the prosecuting officer to protect the innocent as well as to prosecute the guilty. As to the failure of the court to admonish the prosecuting attorney against such conduct, the record discloses that upon all occasions exceptions were properly allowed and objections sustained to the admission of such evi-· dence as the court deemed improper. The court also on numerous occasions admonished the jury to disregard the arguments and remarks of counsel and in every reasonable manner safeguarded the rights of the accused. The rule to be applied in such cases would seem to be as laid down in the case of *Hare v. State,* 4 How. (Miss.) 187, to wit: "If the purity of the verdict might have been affected, it must be set aside; if it could not have been affected it will be sustained." We would not be justified in holding in the in-

stant case that the purity of the verdict might have been affected by reason of the alleged misconduct of the prosecuting attorney or the failure of the court to admonish against such misconduct.

It is insisted that the prosecuting attorney was not in a position to conduct this prosecution for the reason that he was disqualified, having acted as attorney for deceased in divorce proceedings, in which appellant and deceased were parties. We know of no statute or rule of court, and none has been called to our attention, that would disqualify the prosecuting attorney from acting as such even though he had been employed as counsel for the deceased. As to whether or not it was ethical for the prosecuting attorney to conduct the prosecution under such circumstances, we are not called upon to determine.

The eighteenth assignment of error calls into question the action of the court in refusing an offer of proof made by appellant. After the close of the state's case, appellant's counsel in his opening statement made reference to certain matters that he expected to prove, which were objected to by the state. Whereupon the jury was excused and counsel for appellant then made an offer of proof, which briefly stated is as follows: that an unidentified man had entered a dwelling-house in South Boise, some distance from the home of appellant; that a pipe was found near the witness McBride's house, in the same block as the residence of appellant; that a parcel had later been found containing rags covered with blood, slippers and some hair; that a house on Fifteenth Street in Boise had been entered three times; also certain experiences that counsel himself had had which we deem immaterial and unnecessary to relate. In conclusion counsel stated "we don't have to prove that he killed her, but if we can show reasonably plain that somebody else may have done it, surely we are entitled to show it in a case like this." This proof was offered upon the theory that it was within the right of appellant to show that someone other than himself committed the crime. It is well established that before such testimony can be received, there must be such proof of con-

nection with the crime, such a train of facts or circumstances, as tend clearly to point out someone besides the accused as the guilty party. Remote acts, disconnected and outside of the crime itself, cannot be separately proved for such a purpose. (*Greenfield v. People,* 85 N. Y. 76, 39 Am. Rep. 636.) In the case of *State v. Moon,* 20 Ida. 202, Ann. Cas. 1913A, 724, 117 Pac. 757, this court held that:

"A defendant in a criminal trial is not permitted by way of defense to show by conjectural inferences that some other person might have committed the offense for which he is on trial, or that some person other than himself is more probably guilty."

Also in the case of *State v. Fletcher,* 24 Or. 295, 33 Pac. 575, it was said:

"Indeed, there seems to be an absolute unanimity in the decisions, in holding that it is going far enough in favor of the accused to allow him to exculpate himself by showing the fact of another's guilt by some appropriate evidence, directly connecting that person with the *corpus delicti;* and, in criminal cases, mere evidence of confession of guilt by a third person, or of threats made by such person against deceased is clearly inadmissible.

Counsel was correct when he stated that it was not necessary to prove that such other person committed the crime, and if his offer of proof had contained such a train of facts or circumstances as tended clearly to point out such other person as the guilty party, such evidence would have been admissible as tending to create a reasonable doubt in the minds of the jury as to appellant's guilt. However, we do not think that such facts as are alleged in the offer of proof showed or had a tendency to show that someone other than the accused may have been guilty of the crime. There was nothing in the offer of proof to identify these other persons with the crime or in any way to connect them with the *corpus delicti,* and the court properly refused the offer of proof. Evidence that unidentified burglars had been operating in the neighborhood would have no tendency to show who committed the crime. (*Satterwhite v. State,* 77 Tex. Cr. 145, 177 S. W.

959.)   So far as the other matters contained in the offer of proof are concerned, they are clearly immaterial and merit no discussion.

Assignments of error Nos. 7 and 28 attack the action of the court in overruling appellant's motion for new trial. The chief ground relied upon is the action of the prosecuting attorney in stating in the presence of the jury, after counsel for appellant commenced his opening statement: "I don't want any trumped-up defense here." Immediately after this statement was made the bailiff was sworn and the jury were instructed by the court to disregard the remarks made by either counsel in this respect. The jury were then sworn and left the jury-box. This statement of the prosecuting attorney was highly improper and the court would have been justified in showing less leniency. However, in view of the timely admonition of the court to the jury we are not disposed to reverse the order of the court denying the motion for new trial upon this ground.

Another ground specified in the motion for new trial is that the verdict was contrary to the evidence. However, nowhere in the briefs do we find this question assigned as error or relied upon, although it was argued at the hearing, but in view of the gravity of this case we have concluded to briefly set out the salient parts of the testimony in disposing of the case. The evidence discloses that deceased, while asleep in the early morning of September 1, 1922, was struck on the head with a blunt instrument and rendered practically unconscious. She was later taken to a hospital and an operation was resorted to which disclosed a fracture of the skull and hemorrhage of the brain. An autopsy subsequently performed confirmed this disclosure. From the time she received the blow her condition grew progressively worse until September 4, 1922, when her death occurred. The wound on the head, as testified to by several doctors, was the direct cause of her death.

On the night of the assault the deceased was sleeping on a sanitary cot in what is described as the living-room, while appellant and his daughter slept in an adjoining bedroom, a

door leading out of the bedroom into the living-room and another door leading from the latter room on to the screened front porch. Ed. McBride, a witness for the prosecution, who resided in the same block as appellant, testified that in the early morning of September 1, 1922, he was awakened by appellant, who said that someone had broken into his house and hurt his wife and he wanted to call a doctor. Appellant thereupon telephoned for a doctor, after which the witness returned with him to the latter's home, where they found the deceased lying on the sanitary cot and her daughter was with her. The deceased's head was covered with blood and there was blood all over the pillow. Shortly thereafter the doctor arrived and at his suggestion appellant went to McBride's house and notified the police department and two officers were sent out immediately. In the presence of the police officers and McBride appellant stated that it looked kind of bad for him as his wife was suing him for a divorce. This statement was corroborated by the officers.

A witness residing across the street from the residence of appellant testified that in the early morning of September 1, 1922, she heard a woman scream and then heard a man's voice. After two or three minutes of silence she heard the woman scream again and say: "Oh, Al!" (Alfred being the Christian name of appellant) and then the man's voice said, "You shut up!" She testified that she recognized the woman's voice as that of the deceased and the man's voice as that of appellant, and that immediately after the words "You shut up" she heard a screen door slam and someone left the house, and she thought the party leaving went in the direction of McBride's house.

It also appears from the record that on August ——, 1922, deceased commenced an action against appellant for divorce upon the ground of extreme cruelty; that when the papers were served upon him he was very angry; that the day before the assault was made appellant had appeared before the court in answer to an order to show cause, but the matter was postponed; that deceased's attorney called at appellant's residence a few hours prior to the assault and informed appel-

lant that a hearing on the order to show cause would be had on the following day, September 1, 1922. A number of witnesses, well acquainted with deceased and appellant, called by the prosecution, testified that the relations between appellant and the deceased, covering a considerable period of time prior and up to her death, had not always been friendly but quite the contrary. One witness testified she called on deceased on one occasion and found the latter confined to her bed; that it was apparent from the marks on her throat that she had been choked; that appellant when questioned as to deceased being in bed stated that she got funny and he had to stop it; that on another occasion appellant told deceased to get a divorce but that she would not get a dollar from him and he would see that nobody else got her. Another witness testified to having heard appellant charge deceased with being no better than a prostitute. Still another witness testified that he found appellant and deceased quarreling when he went to their home, at which time appellant threatened to kill deceased if she did not quit talking about his mother.

Appellant testified that on the evening prior to the assault, after the evening meal he read a magazine for a while and then the deceased's attorney in the divorce proceedings called and informed him that he could appear the following day in answer to the citation; that about three-quarters of an hour later he got ready for bed and his daughter then returned from playing, at which time appellant, deceased and their daughter ate some watermelon; that the front door was left open, but he could not remember whether the screen door was locked or not; that after retiring the little girl laid on the bed beside him for a little while, then went over to the mother's bed for about twenty minutes and subsequently returned and spent the rest of the night with appellant until awakened by her mother's scream; that appellant was up a couple of times in the first half hour as a result of eating the watermelon and then went to sleep and did not hear anything till just after midnight when he was awakened by what he considered between a scream and a moan; that he

was startled out of a sound slumber; that as he roused up the little girl was lying on his left arm; that while he was withdrawing his arm from under her he glanced towards the door where he saw what was either a man or the shadow of a man across the space of light between the front door and the bedroom door; that he got out of bed and as he did so heard the screen door shut; that he stepped on the front porch and found the screen door unhooked, although it was customary for him or his wife to fasten it before retiring, and that he saw somebody going round the next house; that as he started to investigate he heard another scream, and he thereupon turned on the light and glanced over to his wife and saw blood on her head and all over the pillow and said, "My God! Ethel, what has happened?" and she said, "I don't know," and later, "What makes my head hurt?"; that as soon as he turned on the light the little girl got up and came into the room; that he was excited and hardly knew what he was doing; that he put on some clothes and went to McBride's and telephoned for the doctor; that as he started out the little girl shouted to him, "Shut the door," and he came back and shut it; that shortly thereafter the doctor came and at his suggestion appellant called the police; that upon the arrival of the two police officers deceased was carried into the bedroom and remained unconscious until her death; that appellant was in attendance upon his wife most of the time until she died. He denied the statements of the witnesses for the prosecution that he had threatened to kill deceased and that he assaulted her. The testimony of appellant's daughter as to what happened on the night of the assault is corroborative of appellant's testimony. A witness who was well acquainted with appellant and deceased testified that there was never anything wrong between the parties that she could see.

We have endeavored to set out what we consider the material facts which were submitted to the court and the jury. The solemn duty rested upon the jury to determine from the facts the guilt or innocence of appellant. Both the court and the jury had an opportunity to observe the witnesses

and accused and their manner of testifying and to determine therefrom the probability of the truth or falsity of their testimony, and the reasonableness or unreasonableness of the explanation made by the accused touching certain evidence offered by the state. It was for the jury to determine whether the accused had been impeached or contradicted as to certain material facts about which he testified. The crime was committed under cover of darkness and is revolting in its details. The evidence, it is true, is circumstantial, but from a careful examination of the entire record we are satisfied that there is sufficient competent evidence to support the verdict of the jury and the judgment based thereon, and no error was committed by the court in overruling the motion for new trial upon this ground.

The remaining grounds upon which the motion for new trial was based have already been considered and disposed of under other assignments of error.

No reversible error appearing in the record, it follows that the judgment should be affirmed, and it is so ordered.

Wm. E. Lee, J., and Babcock, District Judge, concur.

William A. Lee, C. J., and Baum, District Judge, dissent.

Petition for rehearing denied.