(No. 5580.   December 1, 1930.)

STATE, Respondent, v. VIOLA LOWE, Appellant.

[294 Pac. 339.]

J. W. Porter and J. W. Taylor, for Appellant.

W. D. Gillis, Attorney General, and Fred J. Babcock, Assistant Attorney General, for Respondent.

McNAUGHTON, J.—This is a prosecution for forgery. The defendant had for a number of years been employed in the office of the county superintendent of schools of Twin Falls county. Her duties were to keep the records and books and perform any of the duties pertaining to the office of county superintendent. Records of the orders drawn by the various school districts were kept by her. When an expenditure of funds was to be made by a common school district, an order for a warrant was issued by the district, signed by the chairman and clerk of the board. This order had to be countersigned by the county superintendent and presented to the auditor who then drew a warrant against that particular fund in payment of the claim, which warrant could be cashed at a bank in the same manner as a check. The custom had prevailed in Twin Falls county of accepting these orders for warrants by the banks upon being indorsed by the payee, and then one or more orders would be presented to the auditor who would then draw a warrant for the total and deliver the same to the bank.

Defendant is charged with forgery in making and passing, with fraudulent intent, a false and forged order for a school warrant, by which School District No. 39, Twin Falls county, was defrauded and damaged. The instrument which it is charged was fraudulently made, forged and passed by the defendant, follows:

"No. ——:
$———:
Leave this
space blank

ORDER FOR SCHOOL WARRANT No. 74.

Twin Falls County, Idaho, Aug. 29, 1929.

The Auditor will draw a Warrant on the —— School Fund (General, Special or Library) of District No. 39 in favor of M. P. Smith                    $480.00/100 for the sum of Four hundred eighty & 00/100 dollars.

P. C. MILLS,                    MRS. J. M. PIERCE,
Chairman.                    Clerk.

Countersigned by ROSE J. WILSON,
County Superintendent."

On the back of the instrument is indorsed the name, "M. P. Smith," which it is charged defendant forged, and also is the indorsement, "Rose J. Wilson VL," which it is charged was indorsed thereon by the defendant. The defendant was found guilty and the case is here for review on several specifications of error.

Appellant claims there was error in permitting the prosecuting attorney in his opening statement to refer generally to other forged orders for warrants on other school districts of the county, claimed to have been prepared by the defendant, in which the signatures of the officers of such districts were simulated. The prosecuting attorney offered evidence of four other similar orders upon which the signatures of the school district officials were forged, wherein it appeared such forged signatures simulated the genuine signatures of the officials, and proof was offered to show such orders and such simulated signatures were made by the defendant. And it was further shown that at least two of these orders were cashed by the defendant in a manner very similar to the manner in which it is claimed the order in question was cashed, except that it was at another bank. The prosecuting attorney's statement was somewhat broader than his proof, but in the absence of bad faith this was not error. (*People v. Arnold,* 199 Cal. 471, 250 Pac. 168; *Mayfield v.*

*State,* 17 Okl. Crim. 503, 190 Pac. 276; *State v. Boone,* 65. Wash. 331, 118 Pac. 46.)

It is claimed there was error in receiving proof of defendant's participation in these other forgeries of similar orders. We think motive may be shown by proof of other acts by a defendant, showing a general scheme in the carrying out of which the crime charged is a distinct crime, even though other similar transactions proved, in showing such general scheme, may constitute independent crimes of a similar nature. (*State v. Montgomery,* 48 Ida. 760, 285 Pac. 467; *State v. O'Neil,* 24 Ida. 582, 135 Pac. 60; *People v. Arnold, supra; People v. King,* 23 Cal. App. 259, 137 Pac. 1076; *People v. Bibby,* 91 Cal. App. 470, 27 Pac. 781.)

The defendant claims error in the rejection of a large number of orders claimed by the witness Davis, who had been engaged by the school districts to make an audit, to be spurious, and in which the handwriting of the various district officials had been simulated.

When these exhibits were offered and objection made, the jury was excused in order that the court might hear the offer of proof. The offer was as follows:

"Mr. Porter: Our purpose is that the state has offered a number of spurious warrants to prove plan and design, and having made partial proof of plan, we are entitled, under our theory of the matter, to show the entire plan, which, of course, would include these additional items. It has been testified here by witnesses for the state that the bank paid these warrants to the last indorser—I should have said the bank paid these *orders* to the last indorser, and from that the witness testified that the one in question was paid to Viola Lowe. We ask to show by these that the bank, if they paid to the last indorser, did not pay the orders for warrants to Viola Lowe, her name not appearing by imitation or otherwise on these orders. In addition to that we ask to show that some of these orders on which her name does not appear were cashed by banks outside the city of Twin Falls where she is a comparative stranger.

That is our purpose for which we ask to have them introduced. It is our purpose to show that there was a person engaged in the forgery of school warrants and that on the back of some of these orders erasures were made after they were cashed at the bank. It is our position that the instruments were cashed and nothing returned to the districts on which they were drawn and that the name Rose J. Wilson and the name Charlotte Pond and the initials V. L. were put on them so as to make it appear to be the indorsement of Viola Lowe and that she obtained the money. Our contention is that her signature was imitated by some person. The testimony of the expert of the defendant was that the indorsement of 'V. L.' on the back of the instruments was not that of Viola Lowe. It is also our purpose to show that a great many were indorsed in that way and have been paid without their ever having been in the hands of Viola Lowe; that some payments were made to other persons and the expression 'Rose J. Wilson, V. L.' were put on the orders by some person for the purpose of implicating the defendant in this action.

"Mr. Larson: To which offer the state objects.

"The Court: It occurs to me that you are not entitled to offer any not in all respects the same as the orders for warrants here, that is, that do not contain the name Rose J. Wilson and the initials V. L. I have in mind the proof as to a man selling stoves. You will not be permitted to go into that at all. You will be permitted to show that the Twin Falls Bank & Trust Company paid orders for warrants to person other than the last indorser."

It is thought the ruling was correct. (*State v. Caviness,* 40 Ida. 500, 235 Pac. 890.) The plan or scheme for defrauding the districts of which the state offered proof was by use of the name of the county superintendent, Rose J. Wilson, V. L., as the last indorsee. The court ruled that proof of other spurious orders of this nature would be received as foundation upon which to make proof that some other person than the defendant carried out the scheme disclosed by the state's proof. No such orders seem to have

been offered. From the court's ruling that he would admit such orders in evidence, we conclude none such were rejected. To permit proof of forgeries by a different scheme or of a. different nature by others would be no defense to the state's case. We regret that these rejected exhibits have been lost from the files and that we must presume their nature from the record of the court's ruling, the completeness of which fortunately is helpful on this point.

It is claimed by appellant that the *corpus delicti* was not proved, in that it was not shown the defendant was not authorized by the district officers to make the order for them. To show the substance of the crime (i. e., that a crime had been committed) the officers of the school district were called. Mrs. Pierce, clerk of the school board, testified the signature to the order in question, "Mrs. J. M. Pierce," was not hers, and also that she did not know M. P. Smith. Mr. Mills, the chairman, testified that the signature to the order, "P. C. Mills," was not his, and that the school district had had no business dealings with M. P. Smith. We think this was tantamount to a direct statement that the order was unauthorized by the district officials. It was also shown the school district had paid $480 on account of a warrant issued pursuant to and upon this order.

The appellant challenges the ruling of the trial court in refusing to permit attorney for appellant to show that several cases mentioned by the witness Kingsley in his *voir dire* as cases wherein he had been accepted as an expert witness on handwriting had been decided against his testimony. While a wide latitude is allowed on cross-examination to enlighten the jury relative to specific opinions held by an expert, and it may be shown that any theory or view advanced is rejected by other authorities, the examination, however, testing the knowledge or experience of such witness to qualify him is for the court. (*Lowe v. Skaggs Safeway Stores, Inc.*, 49 Ida. 48, 286 Pac. 616; *Joyce Brothers v. Stanfield*, 33 Ida. 68, 189 Pac. 1104; *Austin v. Brown Brothers Co.*, 30 Ida. 167, 164 Pac. 95.) It is thought a result of cases in which the witness had thereto-

fore testified would not be material in determining his qualifications.

It is claimed the exemplars received in this case as basis for comparison by the experts were not admitted as genuine or properly proven. They were not admitted by the defendant to be in her handwriting, but an examination of the testimony with reference to the order for warrant made by defendant in the office of the prosecuting attorney, and the other exemplars proved by the county superintendent, leaves no doubt as to the genuineness of each of them. The county superintendent was eminently fair and careful in her testimony. This strengthens rather than weakens the testimony. Further than this, the defense used these same exemplars in connection with the testimony of its own handwriting experts in endeavoring to prove that the handwriting on the order for warrant in question was not that of the defendant and therefore not a forgery by her.

A blackboard was used in explaining the testimony of one of the experts. It was clearly only a demonstration. No juror could have considered it otherwise. We do not think the court erred in its allowance. (*State v. Ryno,* 68 Kan. 348, 74 Pac. 1114, 64 L. R. A. 303; *McKay v. Lasher,* 121 N. Y. 477, 24 N. E. 711.)

It is claimed the case made by the state is not strong enough to sustain a conviction on the ground that there is lacking direct proof that appellant passed or procured $480 on the order in question. The witness Mussell, who was receiving teller at the cage of the Twin Falls Bank & Trust Company, where the order in question was cashed, except during the noon hour, testified the bank paid $480 for the order and that the bank later procured from the county auditor a warrant in that amount on the district, which was paid by the district, and that the payment of $480 for the order was made to the appellant. He did not remember the transaction specifically and did not recall the instance of passing the money to appellant, but testified positively that payment was made to the last indorser; that he knew the handwriting of appellant, and that the initialed

indorsement, which was the last indorsement, was hers. In connection with the proof that the forgery of the order was committed by the appellant, we think this proof of the passing and cashing of the order was sufficient.

It is regrettable that criminal cases can sometimes, from their very nature be proved only by indirect testimony. Here, as often occurs in forgery cases the state must rely very largely on the correctness of expert or opinion evidence. For that reason in this case we have made a very careful examination of the entire record. We find no error. It appears from the record the trial judge was unbiased and eminently fair. There was nothing to inflame or prejudice the jury. We must and we do affirm the judgment.

Givens, C. J., and Budge, Lee and Varian, JJ., concur.

Petition for rehearing denied.