(No. 6195. June 5, 1935.)

STATE, Respondent, v. IRA EMORY, Appellant.

[46 Pac. (2d) 67.]

W. H. Langroise and James F. Ailshie, Jr., for Appellant.

Bert H. Miller, Attorney General, and Ariel L. Crowley, Assistant Attorney General, for Respondent.

Homer E. Martin and Willis C. Moffatt, for Respondent.

BUDGE, J.—An indictment was found and filed against appellant charging him with asking, agreeing to receive, and receiving a bribe from one Rose Sage in the following language:

"That the said IRA EMORY of Boise, Ada County, Idaho, between the dates of August 1, 1932 and January 15, 1933, in the City of Boise, Ada County, Idaho, then and there being an executive officer, namely, a regularly appointed, qualified and acting police officer of the City of Boise, Ada County, Idaho, aforesaid, did then and there wilfully, unlawfully, corruptly and feloniously ask, agree to receive and receive of Rose Sage a bribe, to-wit: $15.00 lawful money of the United States on or about September 1, 1932, upon agreement and understanding that the said Ira Emory's action as such officer would be influenced by such bribe, and upon an agreement and understanding that he, the said Ira Emory, would protect the said Rose Sage in the illegal operation of her hotel business in violation of Section 17–2104 of the Idaho Code Annotated, 1932."

To this indictment appellant entered his plea that he was not guilty. Upon a trial had, appellant was convicted of the offense charged in the indictment and thereupon was sentenced to a term of imprisonment of not less than two years nor more than five years, from which judgment this appeal is prosecuted.

Eight errors are assigned, upon which appellant relies for a reversal of the judgment. The first assignment is predicated upon the action of the court in overruling appellant's objections, made prior to the offer of any proof on behalf of the state, to the introduction of any evidence, it being contended that the court was without jurisdiction in that the indictment did not state a public offense, it being urged that appellant, a police officer of the city of Boise, was not an executive officer within the meaning of I. C. A., sec. 17–502, under which section, it is contended, appellant was indicted. An officer who is neither a judicial nor legislative officer necessarily belongs to the

executive department of the Government, and is an executive or administrative officer, whether it be state, county or precinct office. (*Sheely v. People,* 54 Colo. 136, 129 Pac. 201; *Davis v. State,* 70 Tex. Cr. R. 524, 158 S. W. 288.) Executive officers are charged with the detail of carrying the laws into effect and securing their due observance. A police officer is an executive officer within the meaning of I. C. A., sec. 17–502. (*People v. Markham,* 64 Cal. 157, 30 Pac. 620, 49 Am. Rep. 700; *People v. Powell,* 50 Cal. App. 436, 195 Pac. 456; *State v. Gardner,* 88 Minn. 130, 92 N. W. 529.) The indictment substantially follows the language of the statute (I. C. A., sec. 17–502), and is a sufficient compliance with the provisions of I. C. A., sec. 19–1317, which provides that words used in a statute to define a public offense need not be strictly pursued; but other words conveying the same meaning may be used. The indictment stated a public offense under I. C. A., sec. 17–502.

It is contended that appellant was indicted under the provisions of I. C. A., sec. 17–502, while he should have been indicted under the provisions of I. C. A., sec. 17–1019. A careful examination of secs. 17–502 and 17–1019, *supra,* discloses that these two sections are not in conflict with each other in so far as the offense charged against appellant is concerned. Appellant could properly have been indicted under either section, both sections being broad enough to include the offense charged. A conviction under either sec. 17–502 or sec. 17–1019 would be a complete bar to a subsequent prosecution for the offense charged against appellant.

Assignments of error 2 and 3 involve the same questions raised by assignment 1.

Assignment of error numbered 4 is predicated upon the action of the court in denying appellant's request to advise the jury to acquit him. This assignment is not reviewable. (*State v. Stevens,* 48 Ida. 335, 282 Pac. 93; *State v. McClurg,* 50 Ida. 762, 300 Pac. 898.)

In assignment numbered 5 appellant contends that the court erred in giving instruction number 10, insisting

that the language used in said instruction was equivalent to a peremptory charge to the jury to find appellant guilty, in that it stated as an ultimate fact that appellant had received other bribes, and that if anything was received from Rose Sage the same constituted a bribe. When instruction number 10 is read and considered in connection with instructions numbered 14 and 16 the point sought to be raised is untenable. The use of the word "bribe" did not invade the province of the jury since the court in other instructions clearly advised the jury that before they could find appellant guilty as charged they must find beyond a reasonable doubt: (1) That on or about September 1, 1932, (2) while he was a police officer of Boise City, Ada County, Idaho, (3) he asked for or received, (4) or asked for and received, (5) from Rose Sage, (6) the sum of. $15 lawful money of the United States, (7) under an agreement or understanding that his action as such officer would be influenced by such bribe. Whether he did or did not ask for and receive a bribe from Rose Sage while he was a police officer, under an agreement or understanding that his action as such officer would be influenced thereby, were questions of fact properly submitted to the jury. There was ample evidence to warrant the giving of the instruction and sufficient competent evidence to support the verdict.

It is further contended that that portion of instruction number 10 hereafter quoted was erroneous and was prejudicial to appellant:

"Evidence was offered and by this court admitted, of bribes claimed by the State to have been received by .the defendant at times and from persons other than those charged in the indictment.

"This evidence was admitted as showing a general design and system on the part of the defendant to ask for and receive bribes under like or similar circumstances with those alleged in the indictment, and under the theory that if the defendant had or practiced a general system of asking for bribes under such circumstances, it is more probable

that he asked for and received the bribe from Rose Sage, as charged in the indictment.''

It will be observed that the instruction limited the use of evidence of other alleged bribes to proof of a general design and system on the part of appellant to ask for and receive bribes under like or similar circumstances with those alleged in the indictment. The evidence being so restricted its admission did not constitute prejudicial error.

█ █ Evidence of other offenses is admissible when such evidence tends directly to establish the particular crime; likewise evidence of other like crimes is usually competent to prove the specific crime when it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others. (*State v. O'Neil*, 24 Ida. 582, 135 Pac. 60; *State v. Montgomery*, 48 Ida. 760, 285 Pac. 467; *State v. Lowe*, 50 Ida. 96, 294 Pac. 339; *State v. Cochrane*, 51 Ida. 521, 6 Pac. (2d) 489.) Any pertinent fact which throws light upon the subject under judicial consideration, the accused's guilt or innocence of the crime for which he is charged and on trial, is admissible, nor is such probative fact to be excluded merely because it may also prove or tend to prove that the accused has committed another crime. (*State v. Montgomery, supra.*) It was clearly established that appellant had asked for and received other bribes at times and from persons other than those charged in the indictment, under the same and like circumstances and upon the same understanding or agreement as that had with Rose Sage.

█ █ Assignment numbered 6 is directed against the sufficiency of the evidence to justify the verdict and judgment. This assignment contains subassignments of error, and briefly stated, appellant seeks to make the point that there was no sufficient or any conclusive evidence of appellant's guilt of the offense charged, all witnesses testifying to the acts of appellant being accomplices. This contention cannot be sustained. This evidence was not introduced or

admitted for the purpose of corroboration. The evidence conclusively shows that appellant asked for and received a bribe from Rose Sage as charged in the indictment, and furthermore discloses that he asked for and received bribes for like protection upon a like agreement or understanding from Lillian Stewart, Jane Stevens and Boni Bermensola, who were in no way connected with the offense charged in the indictment and were not, and could not be, accomplices of appellant as a matter of law or fact. Neither was Rose Sage an accomplice with appellant. (*State v. Morrison,* 175 Wash. 656, 27 Pac. (2d) 1065; *State v. Wappenstein,* 67 Wash. 502, 121 Pac. 989; *People v. Powell,* 50 Cal. App. 436, 195 Pac. 456; *People v. Bunkers,* 2 Cal. App. 197, 84 Pac. 364, 370.) The bribe giver is not an accomplice with the bribe taker; each is guilty of a distinct and separate offense. It was held in *State v. Morrison, supra:*

"Had the testimony of the bribe giver been uncorroborated, still it would be sufficient to take the case to the jury."

It is urged that there is no evidence that appellant agreed to receive or received anything of value in return for a promise to protect Rose Sage from any illegal act she might perform. In this connection it is urged that the evidence discloses nothing more, if anything, than that appellant agreed to receive and received money in return for the privilege extended to Rose Sage to keep a girl at her hotel,—not to keep a girl for immoral purposes. The record negatives this contention and clearly establishes the fact that appellant entered into an agreement with Rose Sage, the substance of which was: That he asked, and the evidence shows that he received, from Rose Sage $1 a day, payable on the first and fifteenth of each and every month, and in return Rose Sage was to receive protection from arrest, from plain clothes men, policemen, detectives, and from prosecution under the provisions of I. C. A., sec. 17–2104.

Under assignment numbered 7 appellant claims that the court erred in permitting various witnesses to

testify that appellant was a police officer of the city of Boise, it being urged that such fact could be established only by record evidence, there being such a record. The rule would seem to be that the holding of an official office may be proven by parol and is not restricted to proof by record evidence only. (16 C. J. 614, sec. 1205; *State v. Haskins,* 109 Iowa, 656, 80 N. W. 1063, 77 Am. St. 560, 47 L. R. A. 223; *People v. Johnson,* 65 Cal. App. 680, 228 Pac. 357; *State v. Thornhill,* 99 Kan. 808, 163 Pac. 145; 1 Greenleaf on Evidence, sec. 83.)

The disposition of assignment numbered 7 disposes of assignment numbered 8.

 The rule is well established in this jurisdiction that errors not properly assigned *by appellant* will not be considered on appeal. (*Farnsworth v. Pepper,* 27 Ida. 154, 159, 148 Pac. 48; *Bain v. Olson,* 39 Ida. 170, 226 Pac. 668; *Morton Realty Co. v. Big Bend I. & M. Co.,* 37 Ida. 311, 218 Pac. 433; *Merrill v. Fremont Abstract Co.,* 39 Ida. 238, 239, 227 Pac. 34; *Abercrombie v. Stoddard,* 39 Ida. 146, 228 Pac. 232.)

Having disposed of all errors assigned by appellant and finding no prejudicial error the judgment is affirmed.

Givens, C. J., Morgan, J., and Rice, D. J., sitting in place of Ailshie, J., disqualified, concur.

Petition for rehearing denied.

HOLDEN, J., Dissenting in Part.—I dissent from the majority opinion, in so far as it holds that appellant could have been indicted under either section 17–502, I. C. A., or section 17–1019, I. C. A.

Section 17–502, *supra,* originally enacted in 1864 (revised as appears in R. S., sec. 6381), provides:

"Every executive officer or person elected or appointed to an executive office who asks, receives or agrees to receive, any bribe upon any agreement or understanding that his vote, opinion or action upon any matter then pending, or

which may be brought before him in his official capacity, shall be influenced thereby, is guilty of a felony and forfeits his office."

Section 17–1019, *supra,* also originally enacted in 1864 (revised as appears in R. S., sec. 6528), provided:

"Every person who gives or offers a bribe to any member of any common council, board of commissioners, or board of trustees of any county, city or corporation, with intent to corruptly influence such member in his action on any matter or subject pending before the body of which he is a member, and every member of either of the bodies mentioned in this section, who receives or offers to receive any such bribe, is punishable by imprisonment in the territorial prison for a term of not less than one nor more than fourteen years."

In 1919, section 17–1019, *supra,* was amended (the amendatory provisions being italicized) to provide as follows:

"Every person who gives or offers a bribe to any member of any common council, board of *county* commissioners or board of trustees of any county, city or corporation, with intent to corruptly influence such member in his action on any matter or subject pending before a body of which he is a member and every member of either of the bodies mentioned in this section who receives or offers to receive any such bribe *and every person who gives or offers a bribe to any sheriff, deputy sheriff, policeman, constable, prosecuting attorney, or other officer charged with the enforcement of the laws of this state to receive or secure immunity from arrest, prosecution or punishment for a violation or contemplated violation of the laws of this state or any such officer who receives or offers to receive any such bribe* is punishable by imprisonment in the state prison for a term not less than one year nor more than 14 years."

It appears to be clear that section 17–502, *supra,* is directed against an executive officer or person who asks, receives or agrees to receive, a bribe, upon an *agreement* or *understanding* that his *vote, opinion* or *action* upon a

*matter pending,* or which may be *brought before him,* in his official capacity, shall be influenced thereby, for example, a Governor, Secretary of State, or a commissioner, or head of one of the departments of the state government, and it appears equally clear that the pertinent provisions of section 17–1019, *supra,* as amended, apply to any *policeman,* or other *peace officer,* who *receives,* or *offers* to *receive,* a bribe, to *protect* one *from arrest, prosecution,* or *punishment* for the violation, or contemplated violation, of the laws of the state, and not to an executive officer.

The executive officer, intended by the legislature to be, and actually was, included within the provisions of section 17–502, *supra,* is one who, by virtue of his office, is required to express an opinion, or to vote, or to take action upon, some matter, either pending *before him* in his official capacity, or *which may be brought before him,* which must necessarily exclude a peace officer, such as a policeman, a sheriff, or a deputy sheriff, because no *"matter,"* as that word is used in section 17–502, *supra,* could possibly pend before any *peace officer,* on which he could, within the meaning of that statute, take action, or vote, or determine, or pass an opinion. And further, no statute has been cited, and none can be found, clothing a *police officer* with *power* or *authority* to *hear any matter,* or to *vote upon any matter,* or to take action on any *matter,* or to express an opinion, either orally or in writing, upon any *"matter,"* as that word is used in said statute. While it is true, in a very narrow sense, that an executive officer is one in whom resides the power to execute and enforce the laws, and that a policeman has the power, and that it is his duty to enforce the laws, still and nevertheless, it is apparent from a cursory reading of section 17–502, *supra,* that the legislature did not use the term "executive officer," in that narrow sense.

And conceding, for the purpose of discussion, that a policeman is included within the term "executive officer," as used in section 17–502, *supra,* the enactment of the 1919 amendment, above quoted, expressly *excepted* policemen,

and *other peace officers, out* of said section 17–502, and section 17–1019, *supra,* as amended, being more minute and particular, prevails. In *Herrick v. Gallet,* 35 Ida. 13, 204 Pac. 477, this court held that: "When two acts of the legislature deal with the same subject matter, that one which is more minute and particular prevails."

Section 17–502, *supra,* is a *general statute,* while section 17–1019, as amended, is a *special statute,* enacted for the primary purpose of dealing with the asking for, or the receipt of, bribes by peace officers.

In *Mitchell v. Brown,* 1 E. & E. 267, 102 E. C. L. 267, 120 Reprint, 909, Lord Campbell, C. J., said: "If a later statute again describes an offense created by a former statute, and affixes a different punishment to it, varying the procedure, etc., giving an appeal where there was no appeal before, we think that the prosecutor must proceed for the offense under the later statute. If the later statute expressly altered the quality of the offense, as would make it a misdemeanor instead of a felony, or a felony instead of a misdemeanor, the offense could not be proceeded for under the earlier statute, and the same consequence seems to follow from altering the procedure and the punishment. The later enactment operates by way of substitution, and not cumulatively giving an option to the prosecutor or magistrate."

In *United States v. Lapp,* (6 C. C. A.) 244 Fed. 377, it was held that: "General legislation must give way to special legislation upon the same subject, whether the provisions are found in the same statute or in different statutes, and generally the provisions must be so interpreted as to embrace only cases to which the special provisions are not applicable."

In *Nettles v. Carson et al.,* 77 Okl. 219, 187 Pac. 799, it was held that: "A statute which is enacted for the primary purpose of dealing with particular subjects and which prescribes by specific designation the terms and conditions of that particular subject matter, supersedes a general statute which does not specifically refer to the particular subject-

matter, but does contain language broad enough to cover the subject-matter if the specific statute was not in existence.'' (See, also, *Rich v. State*, 46 Okl. 242, 284 Pac. 903; *People v. Breyer*, 139 Cal. App. 547, 34 Pac. (2d) 1065.)

In *State Ex Inf. Barrett v. Imhoff*, 291 Mo. 603, 238 S. W. 122, it is said: ''Where there are two acts and the provisions of one has special application to a particular subject, and the other is general in its terms, and, if standing alone, would include the same matter and thus conflict with the special act, then the latter must be construed as excepted out of the provisions of the general act and is not affected thereby.''

In *State ex rel. Morck v. White*, 41 Utah, 480, 126 Pac. 330, it is stated: ''It is an elementary doctrine that where there is a general and also a special provision relating to the same subject matter, the special provision controls the general.''

By the enactment of the amendment of 1919, *supra*, the legislature clearly and unmistakably expressed its intention to change the pre-existing law, and to require, as it had an unquestioned right to do, that *thereafter* peace officers must be prosecuted for asking for, or receiving, bribes under that amendment, and not under the *general*, pre-existing statute, to wit, section 17–502, *supra*.

In *People v. Weitzel*, 201 Cal. 116, 255 Pac. 792, 52 A. L. R. 811, it is said:

''Before the amendment of 1905, any member of a common council who offered to receive a bribe was within the statute, and the amendment of the language in the particular noted signifies an intention to change the pre-existing law. In *United States v. Bashaw*, (C. C. A.) 50 Fed. 749, it was said:

'' 'The very fact that the prior act is amended demonstrates the intent to change the pre-existing law, and the presumption must be that it was intended to change the statute in all the particulars touching which we find a material change in the language of the act.'

" 'Where changes have been introduced by amendment, it is not to be assumed that they were without design; usually an intent to change the law is inferred.' *In re Segregation of School District No. 58,* 34 Ida. 222, 200 Pac. 138.

"In *Rieger v. Harrington,* 102 Or. 603, 203 Pac. 576, 580, it was said:

" 'By amending that statute, the legislature demonstrated an intent to change the pre-existing law, and the presumption must be that it was intended to change the meaning of the statute in all the particulars wherein there is a material change in the language of the amended act.' "

See, also, *State v. Wharfield,* 41 Ida. 14, 18, 236 Pac. 862.

To hold a policeman may be indicted under either section 17–502, *supra,* or section 17–1019, *supra,* defeats the clearly expressed purpose and intention of the legislature to require (by *excepting* policemen *out* of said section 17–502), that from and after the effective date of its 1919 amendment, a policeman, charged with the commission of the offense defined by that amendment, must be indicted and prosecuted under the amendment, and not under said section 17–502.

It is my view that the judgment ought to be reversed, and the cause remanded for a new trial under section 17–1019, *supra.*