651 P.2d 916

STATE of Idaho, Plaintiff-Respondent,

v.

Matt WHELAN, Defendant-Appellant.

No. 13606.

Supreme Court of Idaho.

Sept. 15, 1982.

James C. Morfitt, Caldwell, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Timothy M. Walton, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BAKES, Chief Justice.

On February 11, 1979, two Emmett city police officers observed defendant make a U-turn in the city of Emmett, pulled alongside the defendant's car and, according to their testimony, requested that the defendant stop his vehicle. Instead, defendant drove away. The officers pursued the defendant, lost sight of him, but within a few minutes found his unoccupied vehicle. Thinking that the defendant could be found the next day, the officers discontinued their search.

Defendant, who had injured his hand earlier in the evening, then went to the Gem County sheriff's office to ask for assistance in getting to the hospital. The two city police officers happened to be at the sheriff's office when the defendant came in, and upon seeing the defendant attempted to cite him for two traffic violations arising from the defendant's U-turn and departure from that location. Defendant refused to sign the citations, and a scuffle ensued between the defendant and the two citing police officers. The defendant was immediately arrested, placed in custody and subsequently charged with the crime of resisting an executive officer in the performance of his duties by use of force, I.C. § 18–2703.

At trial, the judge concluded that whether Von Puckett and Dedrick, the two citing officers, were Emmett city police officers was a jury question and that any evidence to prove their status as police officers would be admissible. Dedrick and Von Puckett were, over objection, permitted to testify that they were Emmett city police officers. The court admitted, again over objection, other evidence that the two officers were in fact police officers of the city of Emmett. The defense then presented testimony of the Emmett city clerk that there were no records of the appointment of either Dedrick or Von Puckett as police officers by the Mayor. Nor was there any record of the city council's consent or approval of their appointment. The city clerk also testified that no oaths of office executed by either officer prior to February 11, 1979, were on file with the clerk's office. At the conclusion of the trial, the jury returned a verdict of guilty as charged, and the court entered its judgment of conviction. Defendant appealed.

The gravamen of the offense with which the defendant was charged and convicted consists of resisting, by use of force, an executive officer in the performance of his duties. I.C. § 18–2703.[1] Defendant's primary argument on appeal is that each officer's status as an executive officer was a material element of the crime charged and, as such, it was incumbent upon the state to prove that status beyond a reasonable doubt. Defendant concedes that a police officer is an executive officer within the meaning of I.C. § 18–2703. *See State v. Emory,* 55 Idaho 649, 46 P.2d 67 (1935). He alleges, however, that the state's proof that Von Puckett and Dedrick, the two complaining officers, were regularly appointed and duly qualified police officers of the city of Emmett was deficient in three major particulars: first, that the state failed to prove that either officer had taken an oath of office prior to February 11, 1979, the date of the alleged offense; second, that the state presented no evidence that either officer had posted a bond prior to taking office; and third, that the state failed to

---

1. I.C. § 18–2703 was repealed in 1981. 1981 Idaho Sess.Laws, ch. 319, § 1.

prove that either officer was appointed by the mayor, with the approval and consent of the city council.

Resolution of the defendant's allegations requires a review of two Idaho statutes, I.C. §§ 59–401 and 50–204. I.C. § 59–401 provides, in part:

> "59–401. FORM OF OATH—LOYALTY OATH.—Before any public officer or employee elected or appointed to fill any office, created by the laws of the state of Idaho, enters upon the duties of his office, he must take and subscribe an oath, to be known as the official oath . . . .
>
> . . . .
>
> "Public 'officer' and 'employee' includes every officer and employee of the state, University of Idaho, Idaho State College, every other college and every county, city, school district, and authority . . . ."

Defendant alleges that pursuant to I.C. § 59–401 Dedrick and Von Puckett, as police officers, were required to take and subscribe the official oath of office. Defendant further argues that by failing to prove that either officer took the oath prior to assuming office the state correspondingly failed to prove their status as police officers.

A careful reading of that statute, however, indicates that only persons appointed or elected *"to fill any office created by the laws of the state of Idaho"* are required to take and subscribe an oath. Certain public offices are created, directly and indirectly, by the Constitution of the state of Idaho and include, but are not limited to: legislative offices such as state senators and representatives, Idaho Const.Art. 3, §§ 2, 3; executive officers such as Governor, lieutenant governor and secretary of state, Idaho Const.Art. 4, § 1; and judicial officers such as justices of the supreme court, Idaho Const.Art. 5, § 6, district judges, Idaho Const.Art. 5, § 11, and clerk of the supreme court, Idaho Const.Art. 5, § 15. Some county officers are also established by the state constitution. *See e.g.* Idaho Const. Art. 18, § 6.

Additionally, the legislature, exercising its constitutional authority, has enacted several statutes that create municipal offices. *See* Idaho Const.Art. 18, § 6; Art. 12, § 1; *Vineyard v. City Council,* 15 Idaho 436, 98 P. 422 (1908). I.C. § 50–203 provides that officials of each city *shall* consist of a mayor and councilmen. The mayor, with the consent of the city council, is required to appoint a city clerk, city treasurer, city attorney and such other offices as are deemed necessary. I.C. § 50–204. The appointment of police officers, however, is not mandated by statute. Indeed, I.C. § 50–209, which states that "the policemen of every city, *should any be appointed,* shall have power . . .," indicates that the decision to appoint police officers is entirely discretionary with the municipality. Thus, although police officers are public officers whose duties relate to governmental functions of a municipality, *see Klam v. Boehm,* 72 Idaho 259, 240 P.2d 484 (1952), a police officer does not fill an office created by the laws of the state of Idaho. We conclude that even though a city *may* require a police officer to take an oath before assuming the obligations and responsibilities of office, Dedrick and Von Puckett were not required by I.C. § 59–401 to take an oath, and the state was not required to prove that an oath of office was taken pursuant to I.C. § 59–401.

The other statute of primary concern in this appeal is I.C. § 50–204, which states, in part:

> "50–204. APPOINTMENT OF OFFICERS—OATH—BOND.—The mayor, . . . with the consent of the council shall appoint a city clerk, a city treasurer, a city attorney and such other officers as may be deemed necessary for the efficient operation of the city. The city clerk, city treasurer, and such other officers as are designated by the council shall, before entering upon the duties thereof, execute a bond to the city in such penal sum as the city council may by ordinance determine, conditioned on the faithful performance of his duties."

The defendant argues that proof of Dedrick's and Von Puckett's status as police officers was also insufficient in that no

654

evidence established that either officer had posted the bond required by I.C. § 50–204. The only officers required by I.C. § 50–204 to post a bond before entering upon the duties of office, however, are the *"city clerk, city treasurer, and such other officers as are designated by the council ...."* (Emphasis added.) Under the terms of the statute, the determination of which city officers in addition to the clerk and treasurer, if any, must post bond is one for the city council.

The defendant has not called to our attention, nor does the record disclose any ordinance of the city council of Emmett which mandates that any of the city's police officers post a bond prior to assuming office. An appellant has the obligation of presenting an adequate record for our review. *See State v. Cotton,* 100 Idaho 573, 602 P.2d 71 (1979); *State v. Wolfe,* 99 Idaho 382, 582 P.2d 728 (1978); *State v. Sima,* 98 Idaho 643, 570 P.2d 1333 (1977). Additionally, "[t]here is in Idaho ... a presumption of regularity in the performance of official duties by public officers." *Roper v. Elkhorn at Sun Valley,* 100 Idaho 790, 793, 605 P.2d 968, 971 (1980); *Farm Bureau Finance Co., Inc. v. Carney,* 100 Idaho 745, 750, 605 P.2d 509, 514 (1980). Therefore, in the absence of a showing that the city of Emmett requires police officers to post a bond, we must presume that the two complaining officers had been properly appointed and were carrying out the duties of the office. *See Monson v. Boyd,* 81 Idaho 575, 348 P.2d 93 (1959); *McCall v. First Nat'l Bank,* 47 Idaho 519, 277 P. 562 (1929).

Finally, the defendant alleges that I.C. § 50–204 required the state to show that Von Puckett and Dedrick were appointed by the mayor with the consent of the city council, again arguing that in the absence of such evidence the state failed to prove that the two men were police officers and thus executive officers as charged in the information. In relevant part, I.C. § 50–204 provides that "the mayor, ... with the consent of the council shall appoint a city clerk, a city treasurer, a city attorney *and such other officers as may be deemed*

*necessary for the efficient operation of the city."* (Emphasis added.) Police officers are not expressly designated in that statute, and therefore, to fall within its purview police officers would have to be categorized as "such other officers as may be deemed necessary."

Idaho statutes once included police officers in the list of officers to be appointed by the mayor, with the city council's approval, in cities of the second class. *See* R.C. § 2186; C.L. § 2186; C.S. § 3864; I.C.A. § 49–317 (mayor, by and with consent of council, shall appoint such number of regular policemen as may be necessary). In 1951, the legislature deleted reference to the mayoral appointment of city police officers, but retained the city chief of police in the list of officers required to be appointed by the mayor with the city council's consent. 1951 Idaho Sess.Laws ch. 85, § 1.

In cities of the first class, the city council was authorized, but not required, to create by ordinance the officers of street commissioner, treasurer, city clerk, police judge, city attorney, city engineer, chief of police, and chief of the fire department, and such officers, boards and assistants as may be necessary to the proper and efficient conduct of the affairs of the city. *See* C.L. 148:10; C.S. § 3796; I.C.A. § 49–110; I.C. § 50–110.

In 1967 the legislature provided a comprehensive recodification and revision of the laws of the state of Idaho relating to municipal corporations. 1967 Idaho Sess. Laws, ch. 429, §§ 1 *et seq.* In the revised version of title 50 of the Idaho Code, the legislature made no distinction between cities of the first and second class in terms of the election and appointment of city officials. The legislature narrowed the number of officers required to be appointed by the mayor with the consent of the city council and enacted the section without any reference whatsoever to the appointment of a police chief or police officers. 1967 Idaho Sess.Laws, ch. 429, § 68, codified as I.C. § 50–204. Thus, the historical progression of the relevant statutory sections shows the legislature's intention to limit the officers

required by statute to be appointed by the mayor with the consent of the city council. Police officers, once included in the above category, are not expressly enumerated in the present version of I.C. § 50–204, and the apparent legislative intent was to delete police officers from the requirement of mayoral appointment, with city council approval, applicable to other officers.[2]

Even if police officers were included among the officers in I.C. § 50–204 who must be appointed by the mayor with the approval of the city council and post a bond, or were among the officers required by I.C. § 59–401 to take an oath of office, the state argues that the failure to establish such appointment, bond and oath at trial was not fatal to the state's case. The state argues that the officers were *de facto* police officers of the city of Emmett, as opposed to *de jure* officers, and that there was substantial and competent evidence to prove their *de facto* status.

An officer *de facto* is one who actually assumes and exercises the duties of a public office under color of a known and authorized appointment or election, but who has failed to comply with all the requirements of the law prescribed as a precedent to the performance of the duties of the office. *People v. Cradlebaugh,* 24 Cal.App. 489, 141 P. 943 (1914); *e.g., Rogers v. Frohmiller,* 59 Ariz. 513, 130 P.2d 271 (1942); *Sheldon v. Green,* 182 Okl. 208, 77 P.2d 114 (1938); *National Bank of Washington, Coffman-Dobson Branch v. McCrillis,* 15 Wash.2d 345, 130 P.2d 901 (1942). A *de facto* officer performs his duties under color of right of an actual officer qualified in law so to act, both being distinguished from the mere usurper who has neither lawful title nor color of right. *See State v. Britton,* 27 Wash.2d 336, 178 P.2d 341, 346 (1947).

This Court has previously upheld an officer's *de facto* status. In *State v. Bell,* 84 Idaho 153, 370 P.2d 508 (1962), the defend-

ant challenged the appointment of a special prosecutor, alleging that he was denied a fair trial by reason thereof. In *Bell,* this Court stated that even though the appointment was defective or irregular, the special prosecutor became a *de facto* officer as far as the defendant was concerned, and the appointment and prosecution of the action was not subject to collateral attack by the defendant. *Id.* at 160, 370 P.2d at 511.

The *de facto* officer doctrine was also applied in the case of *State v. Wilson,* 41 Idaho 616, 243 P. 359 (1925), an earlier decision with facts analogous to those in the case presently on appeal. In *Wilson,* the defendant, who was charged with the murder of a county sheriff, alleged that the deceased officer was not qualified to be a deputy sheriff and his appointment as such was void. The defendant alleged that the decedent had no authority to arrest him, that the defendant was acting merely in self defense, and therefore that the murder charge against him should be reduced to manslaughter. The record in *Wilson* indicated that the deceased officer was born of foreign-born parents and that he had never perfected his application to become a United States citizen. Citizenship was a requisite qualification of becoming a deputy sheriff. This Court noted, however, that the deceased had been appointed and was acting as a deputy sheriff, that decedent was accepted as a deputy sheriff in the community and that he was known to the defendant to be a deputy sheriff. Under the circumstances in *Wilson,* the Court held that the deceased was a *de facto* officer. *See also O'Malley v. Parsons,* 59 Idaho 635, 85 P.2d 739 (1939).

For the purpose of determining whether Dedrick and Von Puckett were *de facto* officers, the evidence admitted at trial established the following: that Von Puckett had attended the police academy; that both officers had applied for employment with the city of Emmett; that both officers were

---

2. The record does not reflect what ordinances the city of Emmett may have passed with reference to the employment of policemen, or whether the city has legislated on that subject at all. Without a showing in the record of

whether the city of Emmett requires that police officers be appointed by the mayor and consented to by the city council, we decline to assume that such an ordinance exists in the city code of Emmett.

**656**

on the payroll of the Emmett City Police Department; that on the evening of February 11, 1979, they were driving a marked Emmett city patrol car when they requested the defendant to pull over; that both officers were at the county sheriff's office later in the evening when defendant came in; that both were wearing the uniforms and insignia of the Emmett City Police Department; and that both officers had been employed in the capacity of uniformed patrolmen. Thus, the record indicates that both Von Puckett and Dedrick were clothed with substantial indicia of authority.

■ Assuming that the state failed to prove that Von Puckett and Dedrick were *de jure* officers, the record establishes that they were acting at least as *de facto* officers. The term "executive officer" found in I.C. § 18–2703 is broad enough to embrace *de facto* as well as *de jure* officers. The state presented substantial and competent evidence that Dedrick and Von Puckett were *de facto* officers, thus executive officers, and there is sufficient evidence to uphold the jury's verdict that the defendant was guilty of resisting an executive officer in the performance of his duties by use of force.

■ The appellant assigns additional error in the admission of several exhibits at trial and in the court's jury instructions. Both alleged errors directly relate to proof of the status of Von Puckett and Dedrick as police officers and whether the trial court was correct in determining that such proof could be made by evidence of their *de facto* status. Since we conclude that proof of their *de facto* status was proper, there was no error in the admission of the evidence or in the court's instruction on that issue.

Affirmed.

McFADDEN, BISTLINE, DONALDSON and SHEPARD, JJ., concur.

McFADDEN, J., registered his vote prior to his retirement on August 31, 1982.

BISTLINE, Justice, concurring in the result.

Because my misgivings with this case were not addressed by counsel on appeal, I have concurred in the Court's disposition of the issues raised and addressed in the Court's opinion. At the same time, the record, if closely perused, reveals that the defendant's conduct was not criminal; hence he was not properly charged, and the Court, if so disposed, could *sua sponte* raise and address the issue. *State v. Cariaga,* 95 Idaho 900, 904, 523 P.2d 32, 36 (1974) ("[n]either can this Court ignore the issue because it has not been assigned as error in the original briefs"); *see State v. Otto,* 102 Idaho 250, 258, 629 P.2d 646, 654 (1981) and separate opinion of Bistline, J., dissenting. However, it may be that *Cariaga* and *Otto* were big cases, and this one is not so seen.

It is in order, however, to relate several observations with the hope that it will provide further guidance to all Idaho police officers confronted by similar situations.

Initially, it is to be noted that officers Dedrick and Von Puckett's actions are commendable. Their first contact with the defendant resulted in an automobile pursuit which apparently by exercise of good judgment did not turn into a high-speed chase— the officers determining minor traffic infractions were not worth the risk of injury to persons or property. Media reports of high-speed automobile chases resulting in the injury or death of the parties engaged in the chase or innocent bystanders have been all too prevalent in recent years. Under these circumstances, the officers' decision that the defendant could be located the following day and that the incident did not justify extraordinary procedures for apprehension was certainly admirable. I believe, however, the officers should have exercised that same good judgment at the time of their second contact with the defendant that evening.

Faced with an uncooperative traffic violator following their coincidental meeting with Mr. Whelan later that night at the Gem County Sheriff's office, Officer Dedrick insisted the defendant sign the uni-

form citations issued for the traffic violations witnessed earlier by the officers. By his own testimony, Officer Dedrick twice informed the defendant: "[Y]ou're going to sign the citation or you're not leaving." The ultimatum brought on the scuffle which ensued when the officers forcibly resisted his attempt to leave (which allegedly constitutes the basis for ·the charge of resisting an executive officer in the performance of his duty, I.C. § 18–2703). The defendant's reaction to Officer Dedrick's demand is not out of the ordinary, *see State v. Berlin,* 95 Idaho 225, 506 P.2d 122 (1973), even though those of more docile temperament often do yield to authority backed by potential force. The officer had no authority to confine the defendant to the sheriff's office until he signed the Uniform Citation. Having precipitated the scuffle in the attempt to restrain defendant from escaping unlawful detention, the officer ought not to have compounded the bizarre affair by making an arrest arising out of lawful resistance.

This case is on a par with *State v. McNary,* 100 Idaho 244, 596 P.2d 417 (1979), in which an apparently intoxicated individual was driven to his parked automobile by a police officer. When the individual left the police vehicle and drove to his residence in his own automobile the officer arrested him for driving under the influence of intoxicating beverages or drugs in violation of I.C. § 49–1102. The incident also led to charges of carrying a concealed weapon, I.C. § 18–3302, and obstructing an officer, I.C. § 18–705, being filed against the defendant, and produced questionable case law making inroads on the rights of citizenry to protect themselves. *See* dissenting opinions of Bistline and McFadden, JJ., 100 Idaho at 248–55, 596 P.2d at 421–28.

In both *McNary* and the case at bar, the officers' actions played a major part in initiating the incidents from which charges were filed against the defendants. In a *McNary* situation, any officer who picks up an individual who is apparently intoxicated and unable to find his own car, and then transports him to his vehicle and watches him drive away will obviously have crossed the threshold of good judgment. Likewise, in the present situation when the defendant declined to sign the Uniform Citation, Officer Dedrick was not entitled to restrict the defendant's freedom of movement, but rather should have sought an arrest warrant, as is clearly the contemplation of the law.

Certainly the defendant might have been more tractable; the officer undoubtedly needed only guidance on performing his duties. Considering that the defendant had not been placed under arrest for the traffic violations, Officer Dedrick should not have assumed that he could impinge upon defendant's freedom. Indeed, "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person ...." *Terry v. Ohio,* 392 U.S. 1, 20–21, 88 S.Ct. 1868, 1879, 1880, 20 L.Ed.2d 889 (1968) (as quoted in *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975)), and the protection of the fourth amendment is invoked. Although the typical "seizure" situation involves issues of "probable cause" and "reasonable suspicion" to believe a crime has been or is about to be committed, *see generally Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, in this instance the officer had clearly witnessed the traffic offense and had authority to arrest the defendant *at the time. Oleson v. Pincock,* 68 Utah 507, 251 P. 23 (1926). I.C. § 19–603. However, at the sheriff's office, the defendant not having been arrested, he was under no obligation to sign the citation, and was free to go his own way, and his attempt to leave could not be lawfully interfered with.

I.C. § 49–1110 [1] implies that a misdemeanor defendant who refuses to sign a

---

1. I.C. § 49–1110 in pertinent part reads as follows:

"When person must be taken immediately before a magistrate.—Whenever any person is

halted by a police officer for any violation of this act not amounting to a felony, he shall be taken without unnecessary delay before the

traffic citation can be detained and taken before a magistrate, but such clearly contemplates that such detention will be at the time of the offense—not six weeks later, not six months later, nor six hours later. It is an arrest for a misdemeanor which has just taken place "in his presence." I.C. § 19–603(1).

proper magistrate as specified in section 49–1115 in any of the following cases:

. . . .

"2. ... [W]hen the person is issued a traffic citation by an authorized person and refuses to give his written promise to appear in court as hereinafter provided."