797 P.2d 135

James Michael BUNT,
Plaintiff–Appellant,

v.

CITY OF GARDEN CITY, an Idaho municipal corporation; Mayor Jay Davis, individually, and in his capacity as Mayor of the City of Garden City; Frank Cooke, individually and in his capacity as a city councilman of the City of Garden City; Donna Loibl, individually and in her capacity as a city councilwoman of the City of Garden City; Darcy Kull, individually, and in her capacity as a city councilwoman of the City of Garden City; Bill Claiborne, individually and in his capacity as a city councilman of the City of Garden City; Allen Ellis, individually and in his capacity as acting city attorney of the City of Garden City, Defendants–Respondents.

No. 17618.

Supreme Court of Idaho.

Sept. 5, 1990.

Garry L. Gilman, Boise, for plaintiff-appellant.

Clemons, Cosho & Humphrey, Boise, for respondents. Christopher C. Burke argued, Boise.

BISTLINE, Justice.

James Bunt served as a Garden City police officer from January 1978 to May 1982. In May of 1982, the Garden City Council removed Police Chief Gussie and appointed Bunt as the acting chief. A search for a permanent replacement was conducted. Bunt applied and was appointed for an unspecified term by the Council as the Chief of Police September 14, 1982. In January of 1986, Bunt was removed by the unanimous vote of the Council. No specific reason was supplied by the Council for its action and no hearing was conducted. Bunt filed a lawsuit against Garden City, alleging that his termination was wrongful and in violation of his constitutional rights. Both parties moved for summary judgment, and the district court, in a memorandum decision, granted Garden City's motion on the ground that I.C. § 50-206 placed the office of Chief of Police into the employment-at-will framework. Removal of the office holder was therefore possible at the will of the employer, with no notice or hearing required. The question presented by this appeal is whether Bunt was entitled to notice and a hearing prior to his removal from office. As will become apparent, the answer hinges on whether Bunt was an "appointed" official or an "employee" of the City.

Idaho Code § 50-204, entitled "Appointment of Officers," states in pertinent part:

The mayor, except as otherwise provided ..., with the consent of the council shall appoint a city clerk, a city treasurer, a city attorney and such other officers as may be deemed necessary for the efficient operation of the city.

Idaho Code § 50-206 provides for the removal of appointive officers, and reads in pertinent part:

Any appointive officer, ... may be removed by the mayor for any cause by him deemed sufficient; but such removal shall be by and with the affirmative vote of one-half (½) plus one (1) of the members of the full council; provided, that the city council, by the unanimous vote of all its members, may upon their own initiative remove any appointive officer.

Since Bunt was not the city clerk, treasurer, or attorney mentioned in I.C. § 50-204, the question is whether Bunt, as the Garden City Chief of Police, was one of the other "such officers" referred to in that section. If so, Bunt was an appointive officer who could be removed without receiving notice or a hearing.

As we noted in *State v. Whelan*, 103 Idaho 651, 651 P.2d 916 (1982):

Idaho statutes once included police officers in the list of officers to be appointed by the mayor, with the city council's approval, in cities of the second class. *See* R.C. § 2186; C.L. § 2186; C.S. § 3864; I.C.A. § 49-317 (mayor, by and with consent of council, shall appoint such number of regular policemen as may be necessary). In 1951, the legislature deleted reference to the mayoral appointment of city police officers, but retained the city chief of police in the list of officers required to be appointed by the mayor with the city council's consent. 1951 Idaho Sess. Laws ch. 85, § 1.

In cities of the first class, the city council was authorized, but not required, to create by ordinance the officers of street commissioner, treasurer, city clerk, police judge, city attorney, city engineer, chief of police, and chief of the fire department, and such officers,

boards and assistants as may be necessary to the proper and efficient conduct of the affairs of the city. *See* C.L. 148:10; C.S. § 3796; I.C.A. § 49–110; I.C. § 50–110.

In 1967 the legislature provided a comprehensive recodification and revision of the laws of the state of Idaho relating to municipal corporations. 1967 Idaho Sess. laws, ch. 429, §§ 1 *et seq.* In the revised version of title 50 of the Idaho Code, the legislature made no distinction between cities of the first and second class in terms of the election and appointment of city officials. The legislature narrowed the number of officers required to be appointed by the mayor with the consent of the city council and enacted the section without any reference whatsoever to the appointment of a police chief or police officers. 1967 Idaho Sess. Laws, ch. 429, § 68, codified as I.C. § 50–204. Thus, the historical progression of the relevant statutory sections shows the legislature's intention to limit the officers required by statute to be appointed by the mayor with the consent of the city council. Police officers, once included in the above category, are not expressly enumerated in the present version of I.C. § 50–204, and the apparent legislative intent was to delete police officers from the requirement of mayoral appointment, with city council approval, applicable to other officers.

*Whelan,* 103 Idaho at 654–55, 651 P.2d at 919–20 (footnote omitted). Idaho's statutory scheme therefore does not definitively answer the question presented.

We must also consider a number of Garden City ordinances. Ordinance 64, adopted by Garden City in 1954, created the office of Chief of Police. The ordinance provided that such office be filled by appointment; and further provided for removal from office at the pleasure of the Board of Trustees, consistent with I.C. § 50–206. The portion of Ordinance 64 relevant to this case states: "The Chief of Police and all subordinate officers shall hold office at the pleasure of the Board of Trustees."

In 1980, Garden City adopted Ordinance 413. That ordinance was drafted to establish a "general personnel policy" for Garden City. Comprehensive in scope, the ordinance makes substantial changes in the overall rights of Garden City "employees." Section II, entitled "Discharge and Suspension," delineates 10 separate factors limiting reasons an "employee" may be discharged. Section II A states that employees shall be discharged only "for cause."

The crux of Bunt's position is that, while Ordinance 64 may not have provided the Chief of Police with the right to notice and a hearing, Ordinance 413 implicitly repealed Ordinance 64. In support of this position, Bunt reasons that Ordinance 413 was a "comprehensive revision" of the personnel policy for all employees of Garden City, including the Chief of Police. Bunt also maintains that the City administrators construed Ordinance 413 to be applicable to the Chief of Police, because former Chief of Police Gussie was allegedly given an open hearing in 1980 when the Mayor sought to terminate him. We are not persuaded by the reason of the analogy.

Ordinance 413 does not contain any language expressly repealing Ordinance 64. It must be remembered that Ordinance 64 was adopted by the City in 1954 and that under that ordinance, the Chief of Police served at the "pleasure of the Board of Trustees." Ordinance 413 was not adopted until 1980. Thus for at least twenty-six years the office of Chief of Police had never been accorded the right to notice or a hearing prior to removal of its occupant. Moreover, the current Garden City Code expressly lists the Chief of Police as an "Appointive City Officer," to be appointed pursuant to I.C. § 50–204 and removed pursuant to I.C. § 50–206. *See* Garden City Code, Ch. 6, §§ 1–6–1, 1–6–2 (1988).[1] With

---

1. *Garden City Code, Ch. 6, §§ 1–6–1, 1–6–2 (1988),* state:

1–6–1: **Appointive City Officers:** The designated appointed officers and officials of the City are as follows:
  City Clerk/Treasurer

such a long and unwavering history both predating and following Ordinance 413, it is reasonable to surmise that, if the Mayor and City Council desired to effect a significant departure from that history, they would have done so expressly and not, as Bunt suggests, by implication.

■ Moreover, Ordinance 413 does not, by its terms, apply to supervisory personnel, officers, or the Chief of Police. The ordinance is aimed at the "employees" of Garden City. The ordinance itself does not define the term employee. However, unless a contrary purpose is clearly indicated, ordinary words will be given their ordinary meaning when construing a statute or ordinance. *Hartley v. Miller Stephan*, 107 Idaho 688, 692 P.2d 332 (1984). The term employee does not, in common parlance, include supervisory personnel such as the Chief of Police. Additionally, the ordinance contains numerous references to employees on the one hand, and to supervisory personnel on the other. As noted by the district court below: "The clear implication of all these provisions is that there is a definite distinction between an employee and the supervisory personnel described in the ordinance and that the ordinance only applies to the former and not to the latter." R., 127.

It is informative to our holding that an identical conclusion was reached by the Kentucky courts when called upon to construe a similar statutory scheme. In *Turner v. Cole*, 559 S.W.2d 170 (Ky.App.1977), the court concluded its analysis of an issue similar to that we face today by stating that: "It is the opinion of this court that the wording of this ordinance relating solely to employees effectively excluded the chief of police therefrom."

■ Undaunted by these legal obstacles, Bunt argues nevertheless that the Mayor and City Council at one point construed Ordinance 413 as applicable to the Chief of Police. Bunt maintains that sometime in 1980, former Chief of Police Gussie was sought to be terminated by the Mayor and was given an open hearing. From this alleged incident, Bunt infers that the Mayor and Council construed Ordinance 413 as requiring a hearing for the Chief of Police. However, this inference cannot be supported by logic or law. As a matter of logic, accepting as fact that Gussie was given a hearing, it does not necessarily follow that the City Council intended Ordinance 413 as requiring such. The Council simply may have elected, for whatever reason, to give Gussie a hearing without ever admitting that they were required to do so. It may very well have been a matter of placation.

■ Of course, an employer may be held to follow the practices established in the past. But as a matter of law no practice of granting a hearing to the Chief of Police has been properly established. Rule 56 of the Idaho Rules of Civil Procedure requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, [and] shall set forth such facts as would be admissable in evidence...." Here, Bunt's deposition and affidavit relate that in 1980 Gussie was given notice and a hearing before the Mayor and City Council. However, Bunt admits in his deposition that he did not participate in the hearing, he was not present during the hearing, and he did not see evidence relating to any 1980 hearing. Bunt's knowledge regarding the hearing was based upon "general knowledge," and information he had "heard from other members of the police department." Without the requisite personal knowledge of a hearing, Bunt's knowledge rests upon hearsay alone and such facts would be inadmissable at trial. Hence, under Rule 56(e),

Chief of Police
Director of Public Works
City Attorney
Said officials and officers shall be appointed by the Mayor and confirmed by the City Council in accordance with Idaho Code.
1–6–2: **Terms of Officers:** Each and every appointive officer of the City enumerated in Section 1–6–1 shall serve at the discretion and pleasure of the Mayor and City Council. Said officer or official may be terminated at any time by the Mayor for any cause by him deemed sufficient. Such removal shall be confirmed by the affirmative vote of one-half (½) plus one of the members of the full Council; provided, however, that the City Council, by the unanimous vote of all its members may, upon its own initiative, remove any appointive officer.

Bunt has failed to proffer sufficient evidence on this point to withstand a motion for summary judgement.

Finally, we consider whether Bunt had a right to receive notice and a hearing under the United States Constitution. Under the fifth and fourteenth amendments to the United States Constitution, a person cannot be deprived of a property right without due process of law. In the employment context, the question of whether a person has a property interest is to be determined by state law. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). As has previously been indicated, Ordinance 64 and the relevant provisions of the Idaho Code created an employment-at-will situation from whence no property interest springs. Ordinance 413 did not alter this scheme. Thus, Bunt had no property right in the office of Police Chief of Garden City. At best, Bunt had a unilateral expectation of continued employment, which, as noted by the district court, is insufficient to create such a property interest.

The opinion of the district court is affirmed. Costs to respondents.

BAKES, C.J., and JOHNSON, BOYLE and McDEVITT, JJ., concur.