896 P.2d 346

STATE of Idaho, Plaintiff–Respondent,

v.

Robert S. CLIMER, Defendant–Appellant.

No. 21422.

Court of Appeals of Idaho.

May 4, 1995.

Petition for Review Denied June 23, 1995.

Michael J. Wood, Twin Falls County Public Defender, John A. Olson, Deputy Public Defender, Twin Falls, for appellant. John A. Olson argued.

Alan G. Lance, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for respondent. Myrna A.I. Stahman argued.

WALTERS, Chief Judge.

Robert S. Climer appeals from an order denying his motion under I.C.R. 35 to correct a sentence imposed by the district court. He argues that the district court erred by failing to give him credit against his sentence for the time he spent under "house arrest" before the sentence was imposed. For the reasons stated below, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Climer was charged with two felonies, aggravated battery and aggravated assault. The State also sought penalty enhancements for the use of a deadly weapon in the commission of those crimes. His bail was set at $5,000 on each of the two felonies. Climer was unable to post bail. However, he was later released from custody without posting bail, on the condition that he remain at his residence and be monitored by an electronic device which would alert authorities if he left the residence without prior approval from the court. While released on this arrangement, Climer was allowed to leave his residence to meet with his attorney and to attend surgery for one of his daughters. The parties characterize this arrangement as a release on "house arrest." Climer was on house arrest for a total of 270 days.

Following a jury trial, Climer was found guilty of the felony charge of aggravated assault, I.C. § 18–905(b), and of the use of a deadly weapon in the commission of the aggravated assault, I.C. § 19–2520. He was also found guilty of misdemeanor battery, I.C. § 18–903(a). Climer received a unified sentence which included an enhancement for the use of the weapon, for a term of twenty years with a seven-year minimum period of confinement, on the aggravated assault conviction. I.C. § 19–2513. He was given credit for ten days served in jail prior to the sentencing. He also received a concurrent term of ninety days in jail for the battery. Climer filed a motion for reconsideration of his sentences under I.C.R. 35. This motion was followed by a pro se application for a reduction of his sentences. The district court heard both motions and denied relief. The judgment of conviction and sentences, and the denial of the motions for reconsideration, were affirmed by this Court in an unpublished opinion on an earlier appeal. *State v. Climer*, (Ct.App. No. 20606, slip op., June 6, 1994).

Subsequently, Climer filed a Rule 35 motion to correct his sentence, asserting that he should have received credit for the 270 days he served while on house arrest. The motion was denied by the district court. Climer has appealed from the order denying his motion to correct the sentence.

## ANALYSIS

The issue presented to this Court is whether Climer is entitled to receive 270 days credit against his sentence for the prejudgment time during which he was released from custody and placed on house arrest while monitored by an electronic device.

Climer argues that he should receive credit for the 270 days for several reasons. First, he submits that pursuant to I.C. § 18–309, calculation of the term of imprisonment must include credit for any period of incarceration. Climer asserts that house arrest constitutes incarceration because the key element of incarceration is the deprivation of liberty, not necessarily confinement in a jail or prison.

Second, Climer claims that support for his position can be found in the legislative purpose of I.C. § 18–309. He cites *State v. Dorr*, 120 Idaho 441, 443, 816 P.2d 998, 1000 (Ct.App.1991), for the proposition that the purpose of this type of statute is to eliminate unequal treatment of indigent prisoners who, because they are unable to post bail, essentially are confined longer than their wealthier counterparts who may be released from custody by posting bail. He argues that because I.C. § 18–309 is remedial in nature, it deserves liberal construction in order to effectuate the legislative purpose.

Finally, during oral argument on appeal, counsel for Climer advanced several policy reasons why credit should be given to individuals on house arrest. These reasons included decreasing jail overcrowding and reducing the counties' costs of housing inmates. Counsel also observed that because it was possible to assess a defendant placed on house arrest with all of the costs associated with setting up and operating the electronic monitoring device, a county could be freed from that expense by shifting it to a monitored defendant.

In response, the State argues that Climer should not receive credit for the 270 days spent on house arrest because, as a matter of law, being released from custody and placed on house arrest while monitored by an electronic device, does not constitute incarceration pursuant to I.C. § 18–309. The State further maintains that the issue in all of the cases Climer cites in support of his proposition discuss whether house arrest constitutes being in "custody," not whether it constitutes "incarceration." Finally, the State argues that I.C. § 18–309 was neither enacted as a remedial statute, nor has it been interpreted by the Idaho appellate courts as remedial in nature. The State agrees with Climer, however, that the purpose of this statute is to eliminate unequal treatment of indigent prisoners who, because they are unable to post bail, are confined longer than their wealthier counterparts.

Idaho Code § 18–309 provides as follows:

In computing the term of imprisonment, the person against whom the judgment was entered, shall receive credit for any period of *incarceration* prior to entry of judgment, if such *incarceration* was for the offense or an included offense for which the judgment was entered. The remainder of the term commences upon the pronouncement of sentence and if thereafter, during such term, the defendant by any legal means is temporarily released from such imprisonment and subsequently returned thereto, the time during which he was at large must not be computed as part of such term. [Emphasis added.]

■ The question of whether the term "house arrest" constitutes "incarceration" pursuant to I.C. § 18–309 is a question of law. Questions of law are subject to free review on appeal. *State v. O'Neill*, 118 Idaho 244, 245, 796 P.2d 121, 122 (1990). Specifically, the question of law in this case involves statutory interpretation. In this regard, our Supreme Court has noted that, under art. II, § 1, art. III, §§ 1 and 15, and art. V, §§ 2 and 13 of the Idaho Constitution, the enactment of statutes is solely within the province of the legislature, with a duty on the part of the court to construe such statutes, and, if a statute as construed by the court is to be changed, such a change is a legislative not a judicial function. *Ada County Assessor v. Roman Catholic Diocese of Boise*, 123 Idaho 425, 428, 849 P.2d 98, 101 (1993); *Mead v. Arnell*, 117 Idaho 660, 667, 791 P.2d 410, 417 (1990).

■ In resolving a matter turning on statutory construction, the court must first determine if binding authority exists construing the statute; if not, the court must then undertake its own effort to discover the statute's meaning. *McKinney v. Paskett*, 753 F.Supp. 861, 862–63 (D.Idaho 1990). Our Supreme Court has consistently adhered to

the primary canon of statutory construction that where the language of the statute is unambiguous, the clear expressed intent of the legislature must be given effect and there is no occasion for construction. *Ottesen v. Board of Comm'rs. of Madison County*, 107 Idaho 1099, 1100, 695 P.2d 1238, 1239 (1985). Moreover, unless a contrary purpose is clearly indicated, ordinary words will be given their ordinary meaning when construing a statute. *Bunt v. City of Garden City*, 118 Idaho 427, 430, 797 P.2d 135, 138 (1990). In construing a statute, the reviewing court will not deal in any subtle refinements of the legislation, but will ascertain and give effect to the purpose and intent of the legislature based on the whole act and every word therein, lending substance and meaning to the provisions. *Ada County Assessor*, 123 Idaho at 428, 849 P.2d at 101; *George W. Watkins Family v. Messenger*, 118 Idaho 537, 539–40, 797 P.2d 1385, 1387–88 (1990).

The construction of I.C. § 18–309 in the context of the issue raised on this appeal appears to be a case of first impression. In an attempt to discern and implement the intent of the legislature, we "seek edification from the statute's legislative history" and the contemporaneous context at enactment. *Ada County Assessor*, 123 Idaho at 429, 849 P.2d at 102, citing *Leliefeld v. Johnson*, 104 Idaho 357, 367, 659 P.2d 111, 121 (1983). Here, however, the legislative history of I.C. § 18–309 is virtually nonexistent, and there is no indication that the legislature intended a broad interpretation of the term "incarceration."

 We are persuaded that the State's position—incarceration means to confine in a prison or jail—should be adopted rather than the definition espoused by Climer that incarceration includes all restraints on personal liberty. We recognize that Climer has advocated strong policy arguments for an amendment to I.C. § 18–309 for the inclusion of house arrest, as well as synonymous terms such as home confinement, within the definition of incarceration. However, we conclude that redefining the term incarceration to encompass the concept of house arrest is the responsibility of the legislature, not of this Court.

Essentially all of the statutes similar to I.C. § 18–309 reviewed by the federal courts and our sister states interpret the term "custody" rather than the term "incarceration." We find no cases where the language of the statute at issue tracks the language of I.C. § 18–309. The majority of courts interpreting whether the term house arrest constitutes being "in custody" have held that it does not. *See United States v. Wickman*, 955 F.2d 592, 593 (8th Cir.1992) (house arrest as condition of pretrial release does not constitute official detention for sentencing credit); *United States v. Becak*, 954 F.2d 386, 387 (6th Cir.1992) (house arrest as condition of pretrial release does not constitute official detention for sentencing credit); *United States v. Zackular*, 945 F.2d 423, 425 (1st Cir.1991) (voluntary, presentence confinement to comfort of one's home is not the functional equivalent of incarceration); *People v. Denning*, 204 Ill.App.3d 720, 149 Ill. Dec. 890, 891, 562 N.E.2d 354, 355 (1990) (defendant not entitled to credit for time served in home confinement even though home confinement was a condition of probation and not part of trial bond); *Balderston v. State*, 93 Md.App. 364, 612 A.2d 335, 338 (1992) (voluntary home confinement, undertaken as condition of probation, is not custody for purposes of credit against sentence imposed upon revocation of probation); *State v. Pettis*, 149 Wis.2d 207, 441 N.W.2d 247, 250 (Ct.App.1989) (home detention as condition of bail does not render defendant in custody for purposes of sentence credit); *State v. Cobb*, 135 Wis.2d 181, 400 N.W.2d 9, 11 (Ct.App.1986) (confinement in a treatment facility as a condition of probation does not constitute custody for purposes of receiving sentencing credit).

In this same vein, it has been held that home confinement, as a condition of pretrial release, is not equivalent to confinement in a jail or prison because an "offender who is detained at home is not subject to the regimentation of penal institutions" but "once inside the residence, enjoys unrestricted freedom of activity, movement, and association." *People v. Ramos*, 138 Ill.2d 152, 149 Ill.Dec. 273, 277, 561 N.E.2d 643, 647 (1990). "Furthermore, a defendant confined to his

residence does not suffer the same surveillance and lack of privacy associated with becoming a member of an incarcerated population." *Id.*

It is well settled that a defendant is not entitled to credit against his or her sentence for time spent on probation, when sentence is pronounced or ordered into execution upon termination of probation. *State v. Sutton,* 113 Idaho 832, 748 P.2d 416 (Ct.App.1987). Based upon the rationale expressed by the weight of authority addressing the subject, we conclude that house arrest is more akin to probation than incarceration.

Climer cites *State v. Speaks,* 119 Wash.2d 204, 829 P.2d 1096 (1992), for the proposition that a defendant should receive credit for time served on home detention prior to sentencing. However, we believe Climer's reliance on that case to support his argument is misplaced. In *Speaks,* the Washington Supreme Court did not reach the question of whether presentence home detention is more like service of time on probation than like incarceration in jail in order to answer the question of whether the defendant, Speaks, should receive credit for his home detention against the sentence ultimately imposed. The court noted that the Sentencing Reform Act of 1981 (SRA) enacted by the Washington legislature specifically provides that, " 'Home detention' means a program of partial confinement available to offenders wherein the offender is confined in a private residence subject to electronic surveillance." *Id.* 829 P.2d at 1098. The SRA also provides that " 'confinement' means total or partial confinement," and that the "sentencing court shall give the offender credit for all confinement time served before the sentencing if that confinement was solely in regard to the offense for which the offender is being sentenced." *Id.* 829 P.2d at 1097–98. Guidelines of this nature have not been adopted by the Idaho legislature with respect to I.C. § 18–309.

Given the above analysis, we hold that, pursuant to I.C. § 18–309, prejudgment "house arrest" does not constitute "incarceration."

## CONCLUSION

We hold that Climer is not entitled to credit for the 270 days he spent on house arrest prior to sentencing. Accordingly, the district court's order denying Climer's Rule 35 motion to correct his sentence is affirmed.

LANSING and PERRY, JJ., concur.